WARREN A. BURNET and SAMUEL F. BURNET, Minors, by their Curator, Appellants, v. GEORGE BURNET and MARY OUTTEN.

**Division One, June 29, 1912.**

1. **WILLS: Life Estate with Power of Disposal for Use and Comfort of Life Tenant.** A clause of Eliza Andrews's will read: "I give, devise and bequeath the residue of my estate to my said sister Sarah, and it is my desire that whatever of said residue may be left undisposed of at her death shall go to her descendants *per stirpes.* In the .event that I survive my said sister Sarah I give, etc., said residue . . . to her children A, B and C, one-fourth each, and the remaining one-fourth to D and E, children of her deceased son F." The sister Sarah outlived the testatrix. The residuary estate combined both realty and personalty and in it was a note for $2300 secured by a second deed of trust on certain property. Sarah bought in the prior outstanding note for $450 and purchased the property at trustee's sale, paying therefor by allowing a credit on the note. She then executed and delivered a deed purporting to convey the land in fee to her son A, a volunteer. *Held,* that the will gave a life estate to the sister Sarah, with full power to dispose of the property for her use, comfort or enjoyment, or any other purpose incident to those ends, but with no power to will it or give it away, and her son A, being a volunteer, is charged with notice of her want of authority so to deed to him the property obtained at said trustee's sale.

2. ———: Construction: Intent of Testator. A will must be construed according to the intent of the maker, unless that intent runs counter to an inflexible rule of law or public policy.

3. ———: ———: Life Estate by Implication. A life estate may be created, without using express words, by implication from a will, or by language of equivalent meaning. Words, expressions or clauses, inferential only in import, contained in a will devising in general or indefinite terms real or personal property, with a limitation over after the death of the first taker, are sufficient to create a life estate in the immediate devisee and uphold the remainder.

4. ———: ———: Life Estate: Power of Disposal. Where a life estate is created by will, whether by implication only or in express words, with a remainder over, the power of the life tenant to defeat the remainder depends upon the exercise of a superadded power of disposition given by the will, and such power will be strictly construed and confined to its exact intendment, and any attempted exercise thereof beyond its just scope will not affect the rights of the remainderman.

Appeal from St. Louis City Circuit Court.—*Hon. J. E. Withrow*, Judge.

REVERSED AND REMANDED (*with directions*).

*S. T. G. Smith* and *Thomas S. Meng* for appellants.

(1) The will of Eliza F. Andrews vested only a life estate in Sarah Burnet as to the property in controversy. Munro v. Collins, 95 Mo. 33; Bramell v. Cole, 136 Mo. 212; Smith v. Bell, 6 Peters, 84. (2) Even if Sarah Burnet had a power of disposition, the conveyance to George Burnet was not a valid exercise of the power. Harbison v. James, 90 Mo. 425; Buford v. Aldridge, 165 Mo. 425; Garland v. Smith, 164 Mo. 16. (3) An added power of disposition does not convert a life estate into a fee or absolute title, whether the life estate is created by express terms or by implication. Armor v. Frey, 226 Mo. 643.

*Robert L. McLaren* and *Will Brown* for respondents.

(1)   Sarah F. Burnet acquired an absolute estate in the property given to her by the tenth clause of the will of Eliza F. Andrews. Roth v. Rauschenbush, 173 Mo. 582; Green v. Sutton, 50 Mo. 186; Gregory v. Cowgill, 19 Mo. 416; Rubey v. Barnett, 12 Mo. 3; Underwood v. Cane, 176 Mo. 1; Chew v. Kellar, 100 Mo. 362.   (2)   Whether Mrs. Burnet acquired an absolute estate or not, the will conferred upon her the power to dispose of the property during her lifetime and her exercise of that power in this case is valid.   Graves v. Perry, 197 Mo. 550; Russell v. Eubanks, 84 Mo. 88.

## STATEMENT.

This is an action to quiet title submitted to the trial court upon an agreed statement of facts, in substance, to-wit:   That Eliza F. Andrews of St. Louis, Missouri, made her will and added a codicil thereto on the 14th day of June, 1899; that she died in 1901; that the tenth clause of her will was, to-wit:

"I give, devise and bequeath the residue of my estate to my said sister, Sarah F. Burnet, and it is my desire that whatever of said residue may be left undisposed of at her death shall go to her descendants: *per stirpes*.   In the event that I survive my said sister Sarah, I give, devise and bequeath said residue of my estate to her children, George Burnet, Jr., Henry L. Burnet, and Mary F. Outten, one-fourth each, and the remaining one-fourth to Warren and Samuel Burnet, children of her deceased son, Samuel F. Burnet. Should any of said children, either of my sister or of her deceased son Samuel F., die before any right vests in them under this tenth clause of my will, the share of every such deceased child shall go to its issue, if any, and in default of such issue, then to the descendants of my said sister Sarah *per stirpes*."

That Sarah F. Burnet died in June, 1905, leaving a son, George Burnet, and a married daughter, Mary Outten, and two grandchildren, Warren A. Burnet and Samuel F. Burnet, sons of her deceased son, Samuel F. Burnet; that her son, Henry L. Burnet, died in 1903, leaving no descendants, and the parties to this cause are his only heirs.

This suit was originally instituted by the curator of the two grandsons, Warren A. Burnet and Samuel F. Burnet, of the said Eliza F. Andrews, on the 2d day of August, 1905, against George Burnet and Mary Outten, son and married daughter of the said Sarah F. Burnet. Defendant George Burnet has since died, and the cause has been revived against his heirs at law; and the two plaintiffs having reached their majority have come in under their own names. That the land in controversy in this action is controlled by the terms of said clause of the will, for the reason that a note for $2300 and interest, dated February 23, 1901, was a part of the property devised under said clause of the will, and said note was secured by deed of trust on the real estate described in this petition, which real estate was also subject to a prior deed of trust for a note for about $450 and interest, held by a stranger; that the said Sarah F. Burnet, devisee in said clause of the will, used a portion of the residuary estate in purchasing said outstanding note for $450, and subsequently enforced a sale under the deed of trust given to secure the $2300 note, and became the purchaser of said land at the trustee's sale, and paid therefor by allowing a credit on said note for the amount bid at such sale; and being thus possessed of the title of the land in dispute, she, on the 25th of January, 1905, executed and delivered a deed purporting to convey it in fee to her son, George Burnet, then alive, who took possession of said land; that the consideration named in her deed was five dollars. The agreed statement of facts is further, to-wit:

"11.   That George Burnet (his heirs now) are, now in possession of said real estate, claiming to own, the same in fee simple, and are and have been collecting and receiving the rents and profits thereof since the date of said conveyance, and deny that plaintiffs or defendant Mary Outten have any interest or title in the said real estate.

"12.   Defendant Mary Outten approved of said conveyance to George Burnet and now approves and ratifies said conveyance by Sarah F. Burnet to said George Burnet and claims and demands no right, title, interest or estate in said real estate against the heirs of George Burnet, so that the question is whether under the above facts the plaintiffs have each a one-sixth interest in said land and the rents and profits thereof, as aforesaid.

"13.   If they have, defendant George Burnet, then alive, agrees to furnish to them a full and true statement of the rents and profits thereof since said conveyance to him, and that a money judgment for one-third the net total amount thereof may be rendered against him, in favor of said plaintiff, and be a lien, on his share in said land."

The petition set forth that the two plaintiffs were then minors and were the children of a deceased son of Sarah F. Burnet, and alleged that they were entitled as his heirs, by representation, to one-sixth of the real estate described in the petition, which, it is further, alleged, the said Sarah F. Burnet had acquired in the manner above stated and became a life tenant thereof under the terms of the residuary devise to her in clause ten of the will of Eliza F. Andrews; that the said George Burnet, then living, was in possession of the said estate, and claiming to own the same in fee, and was collecting the rents and profits thereof since the death of the said Sarah F. Burnet; and denied the right of plaintiffs to any interest or title in said real estate. The petition prayed for an ascertainment and

determination of the title and interest of plaintiffs and defendants, respectively, in said land, and for a decree of one-sixth interest therein to each of the plaintiffs, and that each of the defendants be adjudged to own an undivided one-third interest therein; that an accounting be had to determine the rents and profits received by said George Burnet since the death of the said Sarah F. Burnet, and that the amount of the interest of plaintiffs under such accounting be charged as a lien against the interest of George Burnet; and for other and further relief. To this petition the defendant George Burnet (then alive) filed an answer containing a general denial, except certain admissions of the statements in the petition as to the death of Eliza F. Andrews and Sarah F. Burnet and as to the heirship and relation of the parties to the suit. The answer further set up the method by which Sarah F. Burnet acquired title to the specific land in dispute, and alleged that she had thereafter conveyed the same to the defendant, as she was entitled to do by virtue of the vestiture in her of a fee simple title to the property described in clause ten of the will of Sarah F. Andrews. The defendant Mary Outten answered, separately, in substance, that under clause ten of said will the property therein devised belonged absolutely to Sarah F. Burnet, who during her lifetime conveyed the same to defendant George Burnet, and that she, Mary Outten, disclaimed any interest therein.

The cause was submitted to the court on the pleadings and the agreed statement of facts on the 22d of April, 1907, and thereafter, on the 13th of May, judgment was rendered in favor of defendants. After the overruling of a motion for a new trial, plaintiffs perfected their appeal to this court.

## OPINION.

BOND, C.—I. The question presented by this appeal is the meaning of the testatrix as expressed in the

tenth clause of her will. The subject-matter of the devise contained in that clause was personal and real estate. When it was made the testatrix had no direct descendants, but had a sister, Sarah F. Burnet, who was the mother of three living children and the grandmother of the two plaintiffs, whose father, the son of said Sarah F. Burnet, had died, leaving plaintiffs his only heirs. These facts were in the mind and purpose of the testatrix when the tenth clause of her will was drawn. That she was alive to these ties of blood and that she intended to make just provision for each of the persons so related to her is plain, for she disposed of the ''residue of her estate'' upon two assumptions: First, that she should be outlived by her sister; second, that she should survive her sister. In both contingencies she, expressly, gave her estate to said niece and nephews and two sons of a deceased nephew. In the former case she devised to them ''whatever of said residue may be left undisposed of at the death'' of her sister to whom she devised it in case she should be living when the testatrix was dead. In the other case she devised to the same persons ''the residue of her estate'' as it should exist at her own death. These specific persons were thus kept within her testamentary intent, and all provided for by name, whether her estate should pass under the one or the other provision of her will. The conclusion is unavoidable that she intended them and each of them, or their descendants, to take either the whole residue of her estate at her death, if her sister was then dead, or what should ''be undisposed of'' at the sister's death in case her sister was alive at the death of the testatrix.

When the intent of its maker is discovered, the will is solved, unless that intent runs counter to an inflexible rule of law or public policy. In the case at bar the testatrix, in simple terms incapable of other meaning, stated her intention to give directly—if she

survived her sister—to the descendants of her sister all of the property referred to in clause ten of her will, or to give indirectly to the same persons what was "left undisposed of" if the sister survived to take under the preceding devise to her. The latter happened. Hence, it is necessary to determine whether the plain intent of the testatrix to give the descendants of her sister "the property left undisposed of" at the sister's death can be carried out under the law governing the making of wills. To answer that question we must determine, first, whether the devise to Mrs. Burnet was a life estate by implication from all the terms of the will; second, if so, whether her deed of gift to one of her children exceeded the limits of any power to dispose of the property impliedly arising from the language of the will. There was no express grant to her of a life estate nor any express power given to dispose of the property devised to her. The power to create a life estate, without using express words, but by implication from the terms and clauses of the will, or by language of equivalent meaning, is no longer an open question in this State. The proposition was so logically and exhaustively considered by MARSHALL, J., speaking for this Division, that it has not been questioned since that ruling and after the array of precedents there cited, to which reference is here made. [Cross v. Hoch, 149 Mo. l. c. 343-344; Walton v. Drumtra, 152 Mo. l. c. 507, opinion by MARSHALL, J., concurred in by a majority of the court, overruling Cornwell v. Wulff, 148 Mo. 542; Roth v. Rauschenbusch, 173 Mo. l. c. 591; Armor v. Frey, 226 Mo. l. c. 669-670.]

That words, expressions, or clauses, inferential only in import, contained in a will devising in general or indefinite terms real or personal property, with a limitation over after the death of the first taker, are sufficient to create a life estate in the immediate devisee and uphold the remainder, has been recognized

by statute and repeatedly decided in this State. The statute relating to wills declares such devises can *only* convey a fee simple to the first devisee, when the will contains "no expressions whereby it shall appear" that "an estate for life only" was devised in the first instance nor any "further devise" to take effect after the death of the devisee to whom the estate was first given. [R. S. 1909, sec. 579.] That statute was enacted to prevent the conclusion, as a matter of law, that devises containing the above quoted features must vest a fee simple in the devisee and destroy the limitation over. Its necessary effect is, in the excepted cases, to leave it to the courts to determine the nature and extent of the interests and estates devised, by an interpretation of the will, as a whole, under the rules prescribed by law to ascertain the intent of the testator. If it should turn out therefore that the intent of the testatrix was in the case at bar by the terms used in her will, to create a remainder in the children and descendants after a life estate to her sister, then it is obvious such intent would not offend any rule of law or principle of public policy, since the statute leaves the court free to gather the intent of the makers of wills in all cases which, like the present one, fall within its exceptions.

Looking at the clause of the will in the light of its language, the situation and relation of the parties, and the rulings made in similar cases in this State and elsewhere, no doubt will exist as to the intentions of the testatrix or their legal consequence.

The motive and object of the will of Mrs. Andrews as shown on its face was to provide for all of her next of kin. These were her sister and descendants of her sister. Her sister, like herself, was advanced in years. The descendants of her sister at the making of the will were three adult children and two grandchildren representing a deceased son of the sister. It was then problematical by reason of the ages of both whether

she or her sister would survive the other.   She pre-
pared for either event by devising her estate, or what
should remain of it, to the descendants of her sister
in any case but with a prior devise to the sister in
case her sister should be living when the will took
effect.  This intention on the part of the testatrix is
unmistakable.   It must prevail, and the limitation
over upheld, and the estate given to the sister
held to be one for life, unless the testatrix has
thwarted her own intention by the language of the
will.    Defendants (respondents) insist she has done
this, and as the sole basis of their contention refer
to the words descriptive of the property devised over,
to-wit: "Whatever of said residue may be left undis-
posed of at her (the sister's) death shall go, etc."
They claim these words necessarily imply power in
the sister of absolute and unlimited conveyance by
sale, gift, any method of transfer, or testamentary
disposition, and that therefore their use in the will
vested a fee simple title in the sister which defeated
any limitation thereafter.   Defendants cannot urge
any other theory for the vesting of a fee simple title
in the sister, for there is no express power given to
her in the will to dispose of the property devised to
her; and the law is clear that no implied power so to
do, can arise from the mere grant to her, of an estate
in terms sufficient to carry a fee where there is a limi-
tation over as here. [Read v. Watkins, 11 Lea (Tenn.),
l. c. 161; Brown v. Hunt, 12 Heisk. (Tenn.) 409; Bean
v. Kenmuir, 86 Mo. l. c. 670, 671, affirmed Walton v.
Drumtra, 152 Mo. l. c. 501.]

II.   Tantamount terms to those contained in this
will have been repeatedly considered by this court in
the interpretation of other wills containing similar de-
vises.

In a case closely like the present, the will devised
to the wife all the estate of the husband "to be held

and enjoyed by her as her own'' with a limitation over
after her death to an adopted daughter of ''such of
said property as shall then be in her possession.''
The court held, that the use of that phrase was for
the reason that ''in all probability, all the property
which his wife receives under the will, will not be 'in
her possession or left' at her death,'' and not because
he intended that she ''should have the power to dispose
of all the property so that none might be left.'' The
court said: ''The intention of the testator is plain;
the whole will must be read together and effect given
to every clause of it, and the words used are to be un-
derstood in the sense indicated by the whole instru-
ment. The testator's wife was to have the use and
enjoyment of all of his property during her life, and
at her death what had not been consumed, or lost, in
that use and enjoyment, was to go to his adopted
daughter.'' [Munro v. Collins, 95 Mo. l. c. 41.]

In another case certain personalty, including the
shares of stock in a business corporation, belonging
to the testator, were devised to his wife with a limi-
tation over to his children of whatever *''remained''*
after the death of the wife. It was held, that a life
estate in this personalty was vested in the wife by im-
plication, and that the power of disposal inferable
from the use of the words ''estate left by her'' and
''remaining of that she acquired under the will,'' was
referable to the uses she might make of the property
during her tenancy, and did not enlarge the life estate
into one in fee. [Lewis v. Pitman, 101 Mo. l. c. 293.]

In another case, the will of the husband gave to
his wife, Sarah Ann, all of his estate, both real and
personal, *''to hold and enjoy absolutely with full
power and authority to dispose of all or any part
thereof at her option.''* In a second clause the will
provided, ''In the event of the death of my said wife
prior to my death, or if she survive me, whatever of
my property may remain undisposed of at her death,

I give and bequeath to Joseph McKinney and to his heirs absolutely and in fee." The court held, that the wife took a life estate with power of disposal only, and that the limitation over was valid as to all of the property remaining at her death. [McMillan v. Farrow, 141 Mo. l. c. 62, 63.]

In all of the preceding cases, the life estates were not expressly declared but deduced by implication from the devises over and the terms and objects of the will.

In another case, the life estate was expressly devised and entire control of the property given to the wife with a limitation over "of what is left of it" at her death. In referring to the implication of a right to dispose arising from these terms, the court said that some of the property was perishable and that some would be consumed in the use, and it was not designed that such portion should be accounted for to the remainderman; adding, "By a devise over of 'what is left' the testator evidently had in mind such possible losses, and did not intend that the legatee for life should be chargeable with them." The court further added: "By the words 'what is left' the testator intended to include in the bequest over, the entire property which should be in the hands of the life tenant at her death, whether it had been diminished by losses or increased by profits, or whether it consisted of personal property or had been invested in real estate." [Bramell v. Cole, 136 Mo. l. c. 213-215.]

In another case, the husband conveyed to a trustee certain property for the support, use and benefit of his wife, and directed the trustee to "sell, mortgage, encumber, lease or otherwise dispose of the same to such person or persons" as the wife might direct and appoint with a limitation over after the death of the wife to other persons. The wife by deed of *gift* and also by will attempted to convey property to her adopted son. The remainderman brought ejectment

and had judgment in the circuit court, which was affirmed here. The court held, that the broad powers to dispose of the property enumerated in the deed to the trustee did not authorize the life tenant, Mrs. Smith, "to give away *this property*," and hence her attempted deed and subsequent will in favor of her adopted son were void. [Garland v. Smith, 164 Mo. l. c. 16.]

In another case, an express life estate was granted to the wife with a remainder over "of what may be left of my estate after her death" to the brothers of the testator. In referring to the effect of these words as affording a power of disposal, the court held, that the widow was entitled to consume as much of the estate as she desired and could not be held accountable by the remainderman for what she chose to spend "as long as good faith" was preserved. [Burford v. Aldridge, 165 Mo. l. c. 425-426.]

In another case, an express life estate was created in a wife and an express power of absolute disposal superadded. The will contained a further clause devising over "anything that should be left" at her death. It was held that the deed executed in pursuance of that power for a *valuable consideration* was not subject to be set aside at the suit of the remainderman, since this disposition was in strict accord with the power of disposal given to the wife during her life tenancy. [McMillan v. Farrow, 141 Mo. 55.] This case cites, among others, Roth v. Rauschenbusch, 173 Mo. 582, which is also referred to by respondents in the case at bar. That case, however, is not in point, for there no life estate was created either by implication or by express terms, but there was a distinct grant of a fee in item two of the will and an attempt by a subsequent item to make a devise over. The court held, that the testator in that case having devised "*the whole of his estate*, real, personal and mixed, *absolutely* and *forever*" (the italics are the court's), could

not in a subsequent clause of the will devise a fee in remainder. The court held, that no words or expressions were contained in that will supporting any inference that the testator intended to create a life estate in his wife or restrain her "power of disposal." The writer of the opinion expressed his assent to the doctrine "that the life estate need not be created by *express* words, but if it is the clear intention from the whole instrument that the first taker is to have but a life estate, the added power of disposition will not convert it into an absolute ownership," and insisted his views had been misconceived on that point. It was held in that case there was nothing contained in any part of the will which afforded an inference of intention on the part of the maker to make any person, other than his wife, the object of his bounty, and in that respect it could be distinguished from the will passed upon in McMillan v. Farrow, supra.

In a very recent case a testator devised certain land and personal property to his children, and by a subsequent clause of his will provided that "upon the death of my children without issue, I direct the share of such child shall revert to my estate to be divided equally amongst my surviving children," etc., and provided further that upon the death of any one of his children, leaving issue, the property should go to such issue. The court reviewed all the precedent decisions, quoting from them *in extenso,* and cited the statute (R. S. 1909, sec. 579), saying: "Manifestly, this statute, when properly analyzed, means that if expressions are embraced in the will whereby it shall appear that such devise was intended to convey an estate for life only and a further devise be made of the devised premises to take effect after the death of the devisee, then the intention of the testator to devise an absolute estate in fee simple to the devisee will be negatived and the estate devised limited to that of a life estate." The court said further: "In our opinion, the ninth

item in the provisions of the will of Green Moore clearly manifested the intention of the testator to limit the estate of his children devised in other items of such will to that of a life estate. It is clear that to hold that this item in the provisions of this will should be eliminated, would not only be violative of the manifest intention of the maker of such will, but would as well be ignoring the plain provisions of section 579, Revised Statutes 1909. That statute, as heretofore pointed out, fully recognizes that a devise, which if standing alone should be construed as an absolute estate in fee simple, might be limited to a life estate by the use of expressions in the instrument which made it appear that such devise was intended to convey an estate for life only, or by making a devise over of the devised premises to take effect after the death of the devisee first named." [Armor v. Frey, 226 Mo. l. c. 667-669.]

The principles to be extracted from these cases are: 1st. That where a life estate is created, whether by implication only or in express words, with a remainder over, the power of the life tenant to defeat the remainder depends upon the exercise of a superadded power of disposition expressly or impliedly given by the will; that such additional power will be strictly construed and confined to its exact intendment, and any attempted exercise thereof beyond its just scope will not affect the rights of the remainderman. 2d. That no fee is vested in the first taker whose power to convey the estate is restricted either as to mode or object, and that a conveyance in any other manner or for any other purpose is ineffectual against a remainder over. 3d. That where the power to dispose is inferential only, its proper extent is to be measured by the situation of the parties, the objects had in view and the intention of the testator, as shown in the will; and that when, as in this case, there was a devise to the first taker of personal as well as real property and a power to

dispose inferable only from the use of such terms as "whatever may be left undisposed of at her death shall go to her descendants *per stirpes*," it will be held to cover sales or transfers for the personal uses and enjoyment of the first devisee, and will not be construed to cover gifts by deeds or will, for such a holding would transform the life estate, shown by the terms of the will, into a fee in the first taker and defeat the intention of the testatrix in that respect, and the further intention to create a limitation over.

III. We think from the terms of the will, the relationship of the parties, and in accordance with the foregoing principles of law, the testatrix by that instrument gave a life estate to her sister with full power to dispose of the property for her use, comfort or enjoyment, or any other purpose incident to these ends, but with no power to give it or will it away; for if these powers had been donated, the life estate would have been transformed into an absolute fee, and the plain purpose of the testatrix to give the property left at the expiration of the life estate to the persons named in the devise over would have been set at naught. This interpretation of the will gives full effect to the power to dispose implied in the life tenant by the use of the words "whatever is undisposed of at her (the life tenant's) death." Any other construction would clearly contravene the intent in the mind of the testatrix when she put the second devise in her will, and further indicated by all of the language and provisions of the will as a whole that she intended only to make the prior devise one for life coupled with a power to dispose adequate to the uses of such tenure and restricted in its exercise by the obligations of good faith on the part of the life tenant or trustee of the preceding devise. In reaching this conclusion we have applied the principle, that the whole efficacy of a will is wrapped up in the lawful intent of its maker.

It follows that the deed of gift made by the life tenant under which defendants (respondents) claim, is inoperative against the estate given to the plaintiffs as remaindermen under the terms of the will for want of power to execute it; and since the grantee therein was a volunteer, he is charged with notice of the want of authority of his grantor to make the same.

The judgment in this case is reversed and the cause remanded to be tried in conformity with the views herein expressed, and for a, decree in accordance with the stipulations made and entered into by the parties and embodied in the agreed statement of facts set out in the record. *Brown, C.,* does not concur.

PER CURIAM.—The foregoing opinion of Bond, C., is adopted as the opinion of the court. All the judges concur.