NORRIS BROADDUS AND ROY O. LARSON, EXECUTORS OF THE ESTATE OF FRED T. PLATT, DECEASED, RESPONDENT, v. PARK COLLEGE, PARK-VILLE, MISSOURI, APPELLANT, HESSIE MONTGOMERY AND EVA QUAIT, RESPONDENTS.—180 S. W. (2d) 268.

Kansas City Court of Appeals. March 6, 1944.

*Frank E. Tyler, Lucian Lane* and *Gossett, Ellis, Dietrich & Tyler* for appellant.

306

*Lathrop, Crane, Reynolds, Sawyer & Mersereau, Cyrus Crane* and *Dean Wood* for respondents, Hessie Montgomery and Eva Quait.

CAVE, J.—This is a suit brought by Norris Broaddus and Roy O. Larson, Executors of the Estate of Fred T. Platt, deceased, to have the court construe certain provisions of Mr. Platt's will. The suit was instituted by the executors, as plaintiffs, against Hessie Montgomery and Eva Quait, and Park College, Parkville, Missouri, as defendants. The specific object of the suit was to have the court determine whether respondents Montgomery and Quait, or appellant Park College, was entitled to a $5000 bequest in said will. The trial court entered judgment declaring that this bequest belonged to Montgomery and Quait, and that Park College had no interest therein. From this judgment the college appealed. The executors are taking a neutral attitude and the real controversy is between the college and Montgomery and Quait.

There are no disputed facts, and the sole question is the construction of the Platt will concerning the disposition of the one item of $5000. Fred T. Platt executed his will on the 16th day of April, 1938, consisting of nine typewritten pages, and divided into twenty-two items. He died on June 30, 1939, and letters testamentary were granted July 17, 1939. He left surviving him his widow, Anna S. Platt, who was living at the time this cause was tried in the circuit court. There were no children. Within the time allowed by law, the widow renounced the will and elected to take under the Statutes of Descent and Distribution, which would give her a one-half interest in his entire estate, absolutely, subject to his debts, and in lieu of dower.

The principal provisions of the will which give rise to this controversy are found in Items 2 and 15. By the first sentence of Item 2, he gives and bequeaths to his wife certain personal property such as pictures, jewelry, precious stones, household goods, etc., which items are not here involved. Then he provides:

"I also give and bequeath unto my said wife the sum of Five Thousand Dollars ($5,000.00) in cash and/or in such securities as she may select, of equal appraised value. *In case of the death of my said wife prior to my demise, then and in that event all of the articles and property hereinabove in this "Second" paragraph given and bequeathed unto my said wife, except the above mentioned $5,000.00, shall be and become a part of the residue of my estate, and I give and bequeath the above mentioned $5,000.00, in cash, unto Hessie Montgomery and Eva Quait, (nieces of my said wife),* now residing in Glenmachon, Strandton County Downs, near Belfast, Ireland, *in equal parts, and in case of the death of either of them, then to the survivor, and in case of the death of both, said $5,000.00 shall be and become part of the residue of my estate."* (Italics ours.)

Item 15 is:

"Fifteenth: In case of the death of my wife, Anna S. Platt, prior to my demise, or after my demise and prior to the final distribution of the residue of my estate as herein provided, then and in that event I direct my executors, hereinafter named, upon final settlement of my estate, to divide and distribute the residue of my estate, including all accumulated income, among the other beneficiaries named herein in the same manner, to the same extent and to the same effect as the trustees herein named would, upon the death of my said wife, divide and distribute the same according to the provisions of paragraph "Eleventh" hereof, *and in case my said wife shall survive me and shall refuse to accept the provisions herein made for her, and shall elect to take under the law, then and in that event, all provisions herein made for her shall become null and void, and whatever portion of my estate remains after my said wife shall take her share, shall be divided and distributed to all beneficiaries named herein, except my said wife, in the same manner and in the same proportions and to the same effect as my said executors would divide and distribute the same if my said wife were not living.*" (Italics ours.)

The major controversy revolves around the meaning and the force and effect of the italicized provision of Item 15, when read, considered and construed in connection with the other items of the will, and particularly with the italicized portion of Item 2.

It is the contention of appellant that the time referred to in the last sentence of paragraph 15 by the words, "if my said wife were not living," is the time of her renunciation of the will, which was ten months after it was probated, and does not refer to the date of testator's death; and therefore, such clause cannot be construed to mean "as if my said wife had predeceased me," or as meaning a constructive death of the wife prior to testator's death.

Respondents state their contention in this manner: "That the testator was referring *to the time of his own death* in using the words 'shall be divided and distributed to all beneficiaries named herein, except my said wife, in the same manner and in the same proportion and to the same effect as my said executors would divide and distribute the same *if my said wife were not living.*'" (Italics ours.)

Appellant, Park College, derives its rights, if any, from Item 11 wherein the testator devises the residue of his estate in trust, after payment of his debts and certain specific bequests, with directions to the trustees to pay a certain sum each month to his wife and also certain other annuities, not here involved, and then provides, "upon the death of my wife, Anna S. Platt, the trust hereby created and said trust estate, principal and accumulated income, then remaining in the hands of said trustees, shall be by said trustees divided and distributed as follows:" Then follows a list of specific bequests to certain persons and charities, and concludes, "all of the rest, residue

and remainder of said trust estate, including accumulated income, if any, shall be by said trustees paid over, assigned, transferred and delivered to Park College, Parkville, Missouri.''

It is Hornbook law that in construing a will ''the intent and design of the testator must be ascertained from a consideration of the language of the will, and, if the language is ambiguous, from the surrounding facts and circumstances. The intent so expressed must be given effect unless opposed by some principle of positive law. [McCoy v. Bradbury, 290 Mo. 650, 657, 235 S. W. 1047, 1049; Burrier v. Jones, 338 Mo. 679, 92 S. W. (2d) 885, 887; Sec. 567, R. S. 1929, Mo. St. Ann., sec. 567, p. 344.] The rule for construction of wills is stated in Weller v. Searcy, 343 Mo. 768, 123 S. W. (2d) 73, 77, as follows: 'The cardinal rule for construction of wills is to ascertain the testator's intention from the language of his will—not one part alone but from the 'four corners' thereof—and so to construe it, if possible, as to give effect to all its provisions. 'When the intent of its maker is discovered, the will is solved, unless that intent runs counter to an inflexible rule of law or public policy.' [Burnet v. Burnet, 244 Mo. 491, 148 S. W. 872, 874.] And in endeavoring to ascertain the testator's intent the court may, so far as is possible, put itself in the testator's position and view the situation from his standpoint.'' [St. Louis Union Trust Co. v. Kern, 142 S. W. (2d) 493, l. c. 496. See also Legg v. Wagner, 155 S. W. (2d) 146; Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S. W. (2d) 39; English v. Ragsdale, 347 Mo. 431, 435, 147 S. W. (2d) 653.]

With these fundamental and well recognized principles in mind, we approach the correctness of the judgment of the trial court.

It must be conceded that when paragraph 2 is read and considered alone, respondents Montgomery and Quait acquired no interest or title to the $5000 bequest. This bequest was absolute and unconditional to the wife and these respondents would receive it or have an interest in it only upon the happening of one event which was ''in case of the death of my said wife *prior to my demise*''. She did not die prior to the testator and therefor the condition in Item 2 did not occur, and if there were no other words or provisions in the will which should be taken into consideration in determining their right to this item, the question involved would be simple.

It must be kept in mind that Item 2 did not devise to the wife a *life estate* in the $5000 with remainder over to respondents, but was an outright bequest in fee to her if she was living at the death of the testator. Cases which discuss a set of facts where the bequest is to the wife for her life and at her death to certain persons, have little bearing on the issues here involved.

We understand that respondents would not and do not question the above conclusion when Item 2 is considered alone; but they base their contention on that portion of Item 15 which instructs the execu-

tors how to distribute the residue of the estate if the wife should renounce the will and take her share at law, and argue that when that language. is read in connection with Item 2, it has the same effect and meaning as if the wife were dead *"at the time of the death of the testator"*. We must consider, then, what effect, if any, the language in Item 15 has upon the rights of the respondents to the $5000 item, in event the widow renounced the will.

She having renounced the provisions of the will for her benefit, and having elected to take one-half of the estate under the statute, the will must now be interpreted as if it contained no provision for the wife. Provisions in her behalf must be disregarded, but the intention of the testator as to others must be carried out as nearly as possible. [St. Louis Union Trust Co. v. Kern, *supra*; Lilly v. Menke, 143 Mo. 137, 149; 3 Page on Law of Wills, sec. 1383.] This is not only the law, but the testator specifically so provided in Item 15. It follows that the $5000 item would become a part of the residuary estate unless. prevented from becoming so by some other clear and definite provision of the will. [Sandusky v. Sandusky, 261 Mo. 351, 358; Palmer v. French, 326 Mo. 710, 721.]

Respondents' contention that the last clause of Item 2 expressly shows the intention of the testator to be that only in case of the death of both of respondents should the $5000 bequest become part of the residue of the estate is untenable. He was there referring to and providing for the situation which would arise if his wife and both respondents should predecease him, none of which events occurred. It cannot be said that such a situation was the only method by which the $5000 item would become a part of his residuary estate. When the wife outlived the testator, the event which would entitle respondents to the $5000 item did not materialize and therefore, at his death, the effective date of the will, left them without any interest in said item. So the question to be solved is, did the testator intend that respondents should receive the $5000 in event the wife renounced the will? They argue that he intended just that, when he provided in Item 15 that if the widow should renounce the will, then the executors should distribute the remaining portion of his estate *"to all beneficiaries named herein except my said wife,* in the same manner and in the same proportions *and to the same effect as* my said executors would divide and distribute the same *if my said wife were not living,"* and that they are *beneficiaries* and therefore come within the above provision of *all beneficiaries.* It is clear from the will that the testator did not intend for the respondents to be *beneficiaries* if the wife outlived him and did not renounce the will. So what did he mean when he provided that in case his wife renounced the will, his executors should divide and distribute the residue of his estate as said executors would have divided and distributed the same *if his wife were not living. Were not living* at what time?

We are of the opinion that respondents do not come within the term beneficiaries as used in this will; because whatever contingent right they may have had in this $5000 ceased to exist when the wife outlived the husband. Under such circumstances they had no interest in that fund. In St. Louis Union Trust Co. v. Bassett, 85 S. W. (2d) 569, 575; the Supreme Court quoted with approval the definition of a beneficiary as "the recipient of another's bounty; one who receives a benefit or advantage; one for whose benefit a trust is created". In Parrott Estate Company v. McLaughlin, 12 Fed. Supp. 23, l. c. 25, a beneficiary is defined as, "One who is lawfully entitled to the profits and proceeds of an estate or property, title to which is vested in another, as in a trustee' (Funk & Wagnall's New International Dictionary (1913 Ed.)); 'one for whose benefit a trust is created, as a *cestui que trust'* (1 Story's Equity Jur., sec. 321; In re Welch, 20 App. Div. 412, 46 N. Y. S. 689); 'a person having enjoyment of property of which a trustee, executor, etc., has legal possession.' [Black's Law Dictionary (3 Ed.), 206.]"

As stated above, this item of $5000 was not willed to the wife during her life with remainder over to respondents, but was devised to her in fee and they were to receive it only upon the one condition that the wife predeceased the testator. That event did not occur, and any contingent interest they may have had was lost. In Item 15 he provided that if his wife "*shall survive me and shall*" renounce the will and take her rights under the law, then "all provisions herein made for her shall become null and void", and this provision, as well as the law above referred to, destroyed any right the widow had in that item.

In arriving at a proper conclusion, it might be well to set out briefly all the provisions of the will. By Item 1, the testator directed the payment of debts, funeral expenses and cost of a suitable monument. No 2 is as above set out. No 3 directed the payment of any mortgages on the home. Nos. 4 to 10, inclusive, were outright bequests of certain amounts of money or specific property to certain specific persons or institutions. No. 11 provided "(all of the rest, residue and remainder of my estate whatsoever . . . I give, devise and bequeath . . ." to named trustees, with provision for payment of a monthly income to his wife and to certain other persons out of the income from said trust fund during her life, and upon her death, the remainder to be paid to twenty-one specific and designated remaindermen. This item also provides that if any of the named organizations or institutions shall have become inactive or ceased to operate in their respective fields of endeavor, then the trustees shall not pay any such organization or institution the annuity or the remainder bequest above made and such organization or institution shall forfeit all rights under this article; and if the residue of his estate shall not be sufficient to pay in full all of the bequests mentioned in Item 11, then the

trustees shall use such residue for the payment in full of said bequests in the order in which they appear in this item, until the residue of his estate shall be exhausted. No. 12 gives directions as to handling of income. No. 13 fixed a time for the beginning of payments to his wife. No. 14 explained that the provisions for his wife were in lieu of all marital rights. No. 15 is as above quoted. No. 16 outlined the powers of the trustees. No. 17 forbade anticipation or pledge of any beneficiaries. No. 18 authorized payment of taxes from the *corpus*. No. 19 empowered the executors to sell property. No. 20 appointed executors. No. 21 provided for succession of trustees, and No. 22 identified all nine pages of the will.

From such a brief outline, it is perfectly apparent that the provisions of the will were thoroughly considered and carefully prepared.

Another cardinal principal to be considered in construing a will in arriving at the intention of the testator is that the general design and scope of it must be given due and careful consideration. [Allison v. Chaney, 63 Mo. 279; Wiggins v. Perry, 271 S. W. 815; Lunsmann v. Mississippi Valley Trust Co., 338 Mo. 669, 98 S. W. (2d) 748.] The first eleven paragraphs completely disposed of testator's property. The residuary clause was No. 11. The remaining eleven paragraphs appointed the executors and trustees and gave them certain directions, power and authority. By Item 15, he gave directions to his executors in case of the happening of any one of three events, (a) his wife might predecease him, (b) she might survive him but die prior to the date the executors made disposition of the residuary to the trustees, or (c) she might survive him and reject the will. The first part of Item 15 makes it perfectly clear that if (a) the wife predeceased him, or (b) she survived him but died before a final settlement of the estate, then the executors should make disposition of *"the residue"* in the same manner and to the same effect as the trustees would have done "according to the provisions of paragraph 11 hereof", which paragraph placed the residue after the payment of certain specific bequests, in a trust fund. In other words, under such circumstances there was no need to give directions for the payment of the specific bequests included in Items 1 to 10, because they were to be paid first and then the residue should become a trust estate. If his wife predeceased him these respondents would have been entitled to the $5000 item; but if she survived him, she would be entitled to it, and if she died before the final settlement of the estate, the $5000 would have gone to her estate because it would have been vested in her. But he went further and provided for the possible happening of the third (c) event, i. e., if his wife should renounce the will. The principal purpose of creating the trust was to provide an income for his wife during her life, with remainder over to specified beneficiaries. When the wife renounced the will and took under the law, she was getting all of the estate she could ever hope to get, either

under the law or the will; and therefore, there was no reason to create or bring into being the trust estate, and he therefore directed the executors to divide and distribute the estate as though no trust had been provided for.

Her renunciation of the will did not affect the specific bequests made in the first ten items, except Item 2, which was for the wife, and which she forfeited by renunciation of the will. The other specific bequests were to be paid before there could be any trust estate or before the remaindermen mentioned in Item 11 could receive their bequests. Therefore, the testator must have had in mind and must have intended to accelerate the time when the remaindermen would come into possession of the money or property bequeathed to them. This is made apparent when we consider the fact that if the widow renounced the will and took one-half of the estate, then the other half may not be sufficient to pay all of the specific bequests, which were to be paid whether the wife lived or renounced the will, and at the same time leave sufficient money and property in the other half to pay all of the specific bequests and the various remaindermen designated in Item 11; because by Item 11 it was provided that if it was not sufficient to pay all of the specific remainder bequests therein listed, then they should be paid in the order of their listing. In St. Louis Union Trust Co. v. Kern, *supra*, the Supreme Court discusses the question now under consideration and quotes with approval this general rule:

"Ordinarily the election of the widow to take against the will has the effect of accelerating any remainders limited to take effect after a life estate given to her. The election of a widow to take against her deceased husband's will is equivalent to her death as respects the payment of legacies and the distribution of that part of the estate which is to be distributed under the will upon the happening of that event. The doctrine is one of interpretation, and proceeds on the supposition that though the ulterior devise is in terms not to take effect in possession until the decease of the prior devisee, yet, in point of fact, it is to be read as a limitation of a remainder, to take effect in every event which removes the prior estate out of the way. . . . The rule now under consideration, like all other rules for the interpretation of a will, yields to the manifest intent of the testator, and if it is evident that the testator did not intend such a result, there will be no acceleration."

In that case, the trust was created to provide a life income to the widow and also to provide a life income to testator's daughter; there was no express provision, as there is in this will, for the acceleration of the remainder and the court properly held that the will showed an affirmative intention not to accelerate the remainder, but to keep the trust alive so that the daughter might enjoy her life estate. That

is not the situation here, but on the contrary, we think Item 15 clearly provides for the acceleration of the remainder.

Respondents contend that the question of remainder interests are not involved since the wife renounced the will, but we conclude they are in error in such contention. There are twenty-one persons and institutions enumerated in Item 11 which are to receive certain bequests on the death of the widow, and if her renunciation of the will did not have the same effect as her death, then those remainder-men would not be entitled to their specific bequests until her physical death. That is exactly the reason we conclude that the testator meant to say, and by the language in Item 15 did say, that if the wife renounced the will, then the executors should divide and distribute the other half of the estate the same as *if she were not living,* i. e. that she was not living at the time the executors must distribute the estate to the specific bequests and either to the trustees or to the remainder-men mentioned in Item 11. That is why he revoked all provisions made for his wife in the will which carried with it the destruction of the right to the $5000 mentioned in Item 2, since she had survived him. It is well recognized that general expressions do not overrule specific directions as to a certain property or legacy, Mersman v. Mersman, 136 Mo. 244, and when the testator, in effect, specifically provided in Items 2 that respondents should not receive this $5000 except upon the one condition and that was that the wife predeceased him, which event did not occur, then we do not believe that the general language in the last paragraph of Item 15 can breathe new life into a dead right. Since respondents rely upon the latter provision of Item 15, to revive their claim of title to a $5000 item, they should be able to point to some specific language which would revive a dead right. We conclude they cannot do so.

When testator inserted the provision concerning the possibly that the wife may renounce the will, he had in mind that she would survive him, first, because she could not renounce it if she did not do so, and second, he stated, ''in case my said wife shall survive me, etc.''. He must have known and contemplated that her survival of him would defeat any claim respondents had to the $5000. This is a reasonable interpretation, because respondents were not blood relatives of his, and were not natural objects of his bounty. They were nieces of his wife, and if she took one-half of his entire estate, he could properly contemplate that she would provide for her relatives and that the balance of his estate would go to persons and institutions which he had specifically provided for in various items.

Respondents call our attention to certain cases which they contend hold that when the wife renounces the will, the estates created therein vest as though the wife had predeceased her husband. To support that contention, they cite In re Packer Estate, 139 Atl. 868; O'Rear v. Bogie, 163 S. W. 1107 (K. C. Ct. of Appeals) ; Cheshire v. Drewry, 197

S. E. 1, (Sup. Ct. N. C.); St. Louis Union Trust Co. v. Kern, *supra*; and Palmer v. French, *supra*. The three cases from foreign states lend some support to the general proposition contended for by respondents, but the language in the wills under consideration were so different from the language in this will, and its general overall plan and scheme that we do not consider them authority to sustain the construction contended for. We have also considered the two Missouri cases above referred to and conclude that they do not support that construction. In Shelton v. Shelton, 348 Mo. 820, 155 S. W. (2d) 187, the Supreme Court said:—

"The language of one will is rarely, if ever, like another and frequently a slight difference in the words used calls for different constructions of testamentary provisions similar in other respects. Even identical words properly receive diverse interpretations when used in contexts or under circumstances which are not the same. Therefore, decisions construing similar testamentary provisions are of small value as precedents and must be considered with caution."

In Owens, Executor, v. Men and Millions Movement, 296 Mo. 110, 120, the Court said:

"If there are expressions in the will which indicate that the testator referred to death subsequent to his own demise, they must be given effect."

The same rule should apply to a situation where the testator refers to an act which must occur after his death. The same doctrine is announced in 69 C. J. 1255, where it is said:

"It is perfectly competent for the testator to fix by will the time for payment or delivery of legacies therein provided for, so long as his restrictions violate no rule of law, and the period is not so uncertain as to be unreasonable, and a court has no power to alter the time of payment so prescribed. Thus the testator may fix the time . . . on the death of some person designated, on the termination of a life estate or some other precedent interest, or at any other indicated time."

What did testator mean in giving directions to his executors for a division and distribution of the remainder of his estate after his wife had renounced the will by this language, "if my said wife were not living"? Did he mean to say, "*as if my mife had predeceased me*"? As carefully as this will was prepared, if he had wanted to say that, he could easily have done so. He used such an expression in other parts of his will. In Item 2 he said, "in case of the death of my said wife *prior to* my demise"; in Item 7 he made a bequest to Roy O. Larson, "if he be living at the time of my death." In Item 8 a bequest was made to Munsill, "if he be living at the time of my death". The same is true in the special bequests of Items 9 and 10. In Item 15, he says, "in case of the death of my wife, prior to my demise, or after my demise and prior to the final distribution, etc." So he understood the meaning of the expression "*prior to my demise*;" but he did

not use that language in the concluding clause of Item 15, but directs that the remaining one-half be divided and distributed in the same proportions and to the same effect as "my said executors would divide and distribute the same if my said wife were not living".

We conclude testator was referring to and giving directions for the division and distribution of the remainder of his property, as of the time the widow renounced the will, and that he did not intend that such renunciation should be construed to bring about the same results as if she had died before testator.

So concluding, it follows that the judgment of the trial court was erroneous and the judgment should be reversed and remanded, with directions to enter judgment in accordance herewith. It is so ordered. *Bland, J.,* concurs; *Shain, P. J.,* not sitting.