**COMMERCE TRUST COMPANY, a corporation, et al., Respondents,**

v.

**William Kirk FAST et al., Appellants.**

No. 51402.

Supreme Court of Missouri,
Division No. 1.

Dec. 13, 1965.

Stinson, Mag, Thomson, McEvers & Fizzell, Donald H. Chisholm, Kansas City, for respondent Jane Poindexter Fast.

Dietrich, Tyler, Davis, Burrell & Dicus, Clarence H. Dicus, Kansas City, for respondent William Kellar Poindexter.

Lowell L. Knipmeyer, Kansas City, for respondent Henry Pratt Poindexter.

Watson, Ess, Marshall & Enggas, Vernon B. Kassebaum, Marvin C. Hayward, Clayton R. Smalley, Kansas City, King, Robin, Gale & Pillinger, Willard L. King, George W. Gale, Chicago, Ill., for respondent Mary Elizabeth Silverstein.

Warren E. Slagle, Kansas City, Guardian Ad Litem for minor defendants.

HYDE, Presiding Judge.

▉ Declaratory judgment action to construe will of Harry Kellar Poindexter (hereinafter called testator) establishing trusts and for instructions to the trustees. The minor defendants, grandchildren of testator, and their guardian ad litem have appealed from the decree entered. We have jurisdiction because three of the testator's four children seek to require the testamentary trustees to distribute to them, as absolute owners, assets which are in excess of our jurisdictional amount. Art. V, Sec. 3; Sec. 477.040, RSMo, V.A.M.S. (The trustees allege and these defendants admit they held assets of the value of $582,699.13, part of which was real estate; but an accounting in evidence indicates a value of $338,572.19 for the undistributed assets.) Robert v. Mercantile Trust Co., 324 Mo. 314, 23 S.W. 2d 32; Sebree v. Rosen, Mo.Sup., 349 S.W. 2d 865. The decree declared that a renunciation by one child of the testator was valid and accelerated the remainder interests as vested interests in the testator's other three children; that these three of the testator's four children were entitled to distribution of all trust assets; and that "none of the named minor defendants, nor any member of the class II group of defendants (testator's grandchildren or descendants) has any right, title or interest in such trust corpus and assets."

Testator's will established a trust in part of his property designated Trust A for his wife for life, which terminated when she died October 12, 1962. (Testator died December 3, 1961.) Most of the rest of his property was put in another trust designated as Trust B, the income from which was to be paid to three of his children (two sons and one daughter) one-fourth each during the life of his widow but with the other one-fourth payable to his daughter Mary Elizabeth Silverstein only if she was single and unmarried. The will provided that after the death of testator's widow, three-fourths the property in Trust B, increased by any balance in Trust A, should be distributed to the three children, who had been receiving the income, one-fourth to each. The remaining one-fourth was to be held in trust with the income to be paid to Mary "during any period of time she is single and unmarried" but to be added to the principal so long as she remained married; and upon her death to go equally to the other three children. Mary commenced an action to contest the will on grounds of lack of testamentary capacity.

Thereafter, Mary renounced all devises and bequests under testator's will and all right, title and interest in his estate including all interest under Trust B thereof. This was done in accordance with a "Family Settlement Agreement" which provided for dismissal of Mary's will contest suit, distribution to the other three children of the trust property who agreed to transfer to Mary such portion of the trust property received by them so that each of the parties would hold an equal share of the trust assets. It was also provided if a court determined the portion of the trust held for Mary was not accelerated, "then the property distributed to the trustees of the portion of said trust shall be held by said trustees in accordance with the terms and provisions of said will and codicil and this agreement shall in no way affect the administration or distribution of said portion of said trust property except as affected by the renunciation of First Party." Mary also agreed to make a will leaving all property she received to the other three children of the testator; a form of such will was attached to the agreement. Mary had no children; appellants are the children of the other three children of the testator.

Respondents' claim is that Mary's renunciation relates back to the date the will became effective so that will is to be construed as though the renouncer predeceased the testator; and that succeeding interests are accelerated, citing Sanders v. Jones, 347 Mo. 255, 147 S.W.2d 424; St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S.W. 2d 493; Broaddus v. Park College, 238 Mo. App. 304, 180 S.W.2d 268. Appellants contend there was no acceleration for the fol-

lowing reasons: (1) there was no effective renunciation because her renunciation was part of a plan for Mary to receive substantial parts of the estate; (2) appellants had contingent remainders which could not be defeated because this would be contrary to the express provisions of the will; (3) the adult beneficiaries had no power to terminate the trust by voluntary agreement and destroy the remainder interests of appellants; (4) the trust created by the will was a spendthrift trust which Mary sought to end by agreement with remaindermen but which could not be terminated by agreement.

As to the first, appellants' argument is that Mary's renunciation was executed for the purpose of and as a part of a plan for receiving a substantial part of the estate renounced and therefore was not a renunciation. They say her purpose was to obtain a larger part of her father's estate than the will gave her and that has been the result. In the first place, what Mary receives is to be received from the testator's other children and not from the estate. In McCormick v. Engstrom, 119 Kan. 698, 241 P. 685, In re Johnston's Estate, 186 Wis. 599, 203 N.W. 376, and In re Mead's Estate, 227 Wis. 311, 277 N.W. 694, 279 N.W. 18, 116 A.L.R. 1127, cited by appellants, there were attempts to directly transfer the interest involved by a renunciation in favor of another and it was held that such a conditional transfer was not a true renunciation. In this case, the renunciation was absolute and unconditional, effective regardless of the result reached by the court in litigation construing its effect. As to the motive for the renunciation, it is stated in 2 Powell on Real Property 623, ¶ 309: "Renunciation can, but seldom does, occur without the renouncer claiming another, and usually larger, share in the total assets." Certainly this is almost always true when a widow renounces a will. The case cited by appellants, In re Slawson's Estate, Fla., 41 So.2d 324, gives as a definition of renunciation " 'a gratuitous abandonment or giving up of a right; an express waiver without consideration.' " See 76 C.J.S. 1169, 54 C.J. 392. However, the cases cited relate to renunciation in connection with negotiable instruments. See English v. Evans, Mo.App., 157 S.W.2d 793, 795; Gannon v. Bronston, 246 Ky. 612, 55 S.W.2d 358, 362, 86 A.L.R. 324. In 96 C.J.S. Wills § 1151, p. 951, it is said: "A consideration is not essential to the validity of a disclaimer by a devisee of his interest." See In re Hodge's Estate, 20 Tenn.App. 411, 99 S.W.2d 561, 564. In any event, any consideration involved herein was not from the estate or the trust.

57 Am.Jur. 1071, Wills, Sec. 1566, states: "The motives of the donee in declining the gift are immaterial, at least so long as he receives no fraudulent benefit for the renunciation." See also Annotation, 93 A.L.R.2d 64, citing In Re Wimperis, Eng. (1914) 1 Ch. 502, in which it was said of a renunciation by a legatee who was given an annuity by the will: "I have no doubt at all that the desire to refuse is the result of a bargain made between her and the residuary legatees—not a bargain between her and the executors, but between her and persons who are for this purpose outsiders—by which she is to receive certain benefits, not those given by the will. * * * What is suggested by the trustees is that the effect of the negotiations and correspondence is that they are evidence that she had accepted the legacy. That is the contention, because if she had accepted she could not have disclaimed. Is that really so? The desire of the parties was to substitute something else for the annuity. How the substitution was to be effected was not determined. I think on the whole that it would be going too far to say that in proposing to accept something in substitution the plaintiff must be treated as having accepted the annuity and as proposing to assign and release it. I take it that at the time of the correspondence she had not made up her mind to accept the annuity. The matter was still in abeyance and she has now definitely made up her mind

not to accept it. I hold, therefore, that she is entitled to disclaim the bequest." Certainly in this case, Mary never accepted the trust provisions for her. Certainly the will did not make provisions which would be beneficial to her so as to be any basis for a presumption of acceptance. See Seifner v. Weller, Mo.Sup., 171 S.W.2d 617. Instead she promptly indicated her rejection of these provisions by bringing a suit to contest the will, which was only dismissed after she renounced all interest under the will. Whatever Mary will receive will not be received from the executors or trustees of her father's estate but directly from her brothers and sister "who are for this purpose outsiders." We, therefore, hold that Mary was entitled to renounce unless prevented by the spendthrift trust provision of the will which we will next consider.

In appellants' fourth point, it is argued Mary could not renounce because of the spendthrift trust provision in the will that beneficiaries "shall be without power to sell, assign, transfer, pledge, mortgage, hypothecate, alienate, anticipate, or in any manner encumber or affect his or her claim, beneficial or other right, title or interest in and to the net income or principal of any of the Trust Estates, or any part thereof, nor shall such claimed interest in any Trust Estate, or any part thereof, be subject to his or her liabilities, or to judgment, or to legal process, bankruptcy proceedings, or claims of creditors, and shall not otherwise pass by operation of law, but any such attempted pledge, assignment, transfer or other disposition, voluntary or involuntary, shall be void." It is said: "The beneficiary of a spendthrift trust cannot disclaim after he has once accepted the provision made for him in the trust any more than he could disclaim the interest in an ordinary trust after he had once accepted. But may the beneficiary of a spendthrift trust disclaim the interest, thus terminating the trust as to him, before he has accepted the interest under the trust? The few cases on this question are not in entire agreement. In England it was held that a married woman

might disclaim a legacy given for her separate use and subject to restraints on alienation. [In Re Wimperis, supra.] A similar result would clearly follow where a widow elects to take against a will which establishes a trust in her favor. The American cases, though not entirely clear, generally take the view that the interest under a spendthrift trust may be disclaimed." (Bracketed insert ours.) Spendthrift Trusts, Griswold, 2d Ed., 603, Sec. 524. Likewise Sec. 36, Comment c, American Law Institute Restatement of Trusts, states: "Although the beneficiary of a spendthrift trust who has accepted the interest under the trust cannot release his interest, he can, if he has not accepted the interest, disclaim it." Appellants rely on cases such as In re Borsch's Estate, 362 Pa. 581, 67 A.2d 119, where the beneficiary of a spendthrift trust attempted to renounce after having received the income for 25 years. Appellants' other cited cases are Clemenson v. Rebsamen, 205 Ark. 123, 168 S.W.2d 195; Fletcher v. Los Angeles Trust and Savings Bank, 182 Cal. 177, 187 P. 425; Stein v. La Salle National Bank, 328 Ill.App. 3, 65 N.E.2d 216; Kirkland v. Mercantile-Safe Deposit & Trust Co., 218 Md. 17, 145 A.2d 230; Rose v. Southern Michigan National Bank, 255 Mich. 275, 238 N.W. 284; Bixby v. St. Louis Union Trust Co., 323 Mo. 1014, 22 S.W.2d 813; In re Bosler's Estate, 378 Pa. 333, 107 A.2d 443. All of these cases, except Bixby (which involved assignment of income received by a beneficiary), involved attempts by beneficiaries to terminate a trust and obtain the trust property, not a renunciation of their interest in it. None of them involves a renunciation of an interest which had never been accepted or acquired at all and as to which the intended beneficiary contested the will creating it at all times claiming it was invalid. We hold, under the circumstances of this case, Mary could and did renounce all provisions of the will for her. It is suggested that the testator's other three children have anticipated their interest in the trust for Mary in violation of the spendthrift trust provision; but

since Mary had the right to renounce and since as we hold their interests in the trust for her accelerated by operation of law from her renunciation, we do not consider the spendthrift trust provision to be involved in determining their rights.

Appellants' second and third contentions are considered together as doctrine of acceleration answers both. See Sec. 231, American Law Institute Restatement of Property; 2 Powell on Real Property 623, ¶ 309; 5 American Law of Property 196, Sec. 21.43; Annotation, 164 A.L.R. 1297; 33 Am.Jur. 620–628, Life Estates, Remainders, Etc., Secs. 154–159; 31 C.J.S. Estates § 82, p. 156; 57 Am.Jur. 1073–1076, Wills, Secs. 1571–1573; 96 C.J.S. Wills § 1151, p. 948. The case of Keen v. Brooks, 186 Md. 543, 47 A.2d 67, 164 A.L.R. 1292, presented a situation similar to this case. There the testator created a trust of his residuary estate for his daughter Mrs. Keen for life, at her death the principal to be divided equally between the testator's two grandchildren. It was provided that if either of the grandchildren should die without issue before the death of Mrs. Keen the whole of the principal should be paid to the survivor and if either died with issue the issue of the deceased grandchild should "take the share which their parent would have taken if living, per stirpes." Mrs. Keen and both granddaughters survived the testator and Mrs. Keen filed a renunciation of the life estate. The estate was distributed to the granddaughters including a tract of land which thereafter they deeded to Mrs. Keen, who contracted to sell it. The title being questioned by the purchaser, Mrs. Keen brought specific performance which the trial court denied. On appeal, this was reversed, the court holding: "The substitutional provisions in favor of more remote descendants are not alone sufficient to prevent acceleration. Since the grandchildren acquired the absolute estate upon renunciation, the subsequent conveyance and the contract of sale are valid, and specific performance should have been decreed."

The court based its ruling on the principles of the Restatement of Property, discussed as follows: "The rules applicable to the solution of problems growing out of renunciation are clearly set out in the Restatement, Property. Section 231 declares: 'When an attempted prior interest fails because the person to whom it is limited renounces it, succeeding interests are accelerated except when (a) the terms and circumstances of the limitation manifest a contrary intent * * *.' We are not here concerned with situations where the person renouncing claims an interest in derogation of the dispositions sought to be made, as for example, a renouncing spouse. Comment (a) points out that 'whenever an attempted prior interest is renounced, some disturbance of the desired plan of disposition is inevitable. The extent of this disturbance normally is kept at a minimum by accelerating the succeeding interests. This occurs in accordance with what is normally to be inferred as the intent of the conveyor, namely, that as each of the successive interests sought to be created by him ends or becomes impossible, the next in order in the limitation should move up. * * * Since acceleration occurs pursuant to an inferred intent it is prevented by a manifestation of an intent contrary to that normally to be inferred.' Comment (e) states that 'when the renounced interest is the only hindrance to the succeeding interest becoming forthwith a present interest, then acceleration which occurs in accordance with the rule stated in this section causes such succeeding interest to become forthwith a present interest. The fact that such interest has become a present interest may end the time during which it continues to be defeasible * * *.' Comment (h) states that 'when the renounced interest is the only hindrance to the succeeding interest becoming forthwith a present interest and such succeeding interest is limited with a provision that if a designated event shall occur during the stipulated period of the renounced interest then another interest in another person shall be

substituted therefor, such substitution is to be construed as having been intended to occur only if the designated event occurs during the actual continuance of the attempted prior interest. The renunciation of such attempted prior interest prevents the period within which such substitution was intended to be possible from ever existing. The accelerated interest is not defeasible upon the subsequent occurrence of the designated event. This rule of construction is required by the intent normally to be inferred from a limitation of the type described * * *. The rule stated in this comment applies to limitations made in favor of a class where, in the absence of renunciation, existing persons would be construed to have interests vested subject to complete defeasance in favor of such persons as remain in the class at the end of the stipulated duration of the renounced interest.' The illustrations make it clear that where there is a devise to a life tenant and a named remainderman C, the mere fact that it is provided that if C predeceases the life tenant the property shall go to C's descendants alive at the life tenant's death, and if none to a third party, will not prevent C from taking an indefeasible estate upon renunciation.

"In further comment on clause (a) it is said: 'A construction that the "terms and circumstances of the limitation manifest a contrary intent" is not justified solely by the fact that after limiting a life interest (the renounced interest) it is provided that the gift over shall take effect "at the death of" the life tenant * * *. Such language is to be construed as referring to the ending of such life interest either in the manner stated or by its renunciation.' "

These principles are also stated, as follows: "When the renounced interest is the only hindrance to the succeeding interest becoming forthwith a present interest and the succeeding interest is limited as a gift to a class in such manner that the class can increase its membership only during the stipulated period of the renounced interest, then such increase in membership is usually to be construed as having been intended to occur only during the actual continuance of the attempted prior interest. The renunciation of such attempted prior interest prevents the period during which such increase was intended to be possible from ever existing. The accelerated interest of each of the persons who is a member of the class at the time when the creating conveyance becomes operative is not subject to being diminished in size by such class thereafter and during the stipulated period of the renounced interest opening and admitting new members. This rule of construction is required by the intent normally to be inferred from a limitation of the type described." 2 Powell on Real Property, ¶ 309, p. 628. We find nothing in the will to manifest a contrary intent to vesting in the three named children upon termination of the trust for Mary by reason of her renunciation of it. For situations in which a contrary intent as to termination appears and sequestration is authorized for eventual distribution, see Secs. 232, 233, 234, 235, Restatement of Property. See also Crossan v. Crossan, 303 Mo. 572, 262 S.W. 701; St. Louis Union Trust Co. v. Kern, supra, 346 Mo. 643, 142 S.W.2d l. c. 498. We hold that Mary's renunciation was valid and that it resulted in acceleration of the remainders of the other three children of the testator.

The judgment is affirmed.

All concur.