Paul BAKEWELL, Jr., and Mercantile Trust Company, Executors of the Estate of Lenore Scullin Clark, Deceased; Henry Woodward Green, Executor of the Estate of May Scullin Green, Deceased; Stella Wade Warren and Eugenia Scullin Bagnell, Beneficiaries Under the Will of John Scullin, Deceased; and Paul Bakewell, Jr., One of the Co-Trustees Under the Said Will (Plaintiffs), Appellants,

v.

MERCANTILE TRUST COMPANY, Individually and as Co-Trustee Under the Will of John Scullin, Deceased, Thomas C. Hennings, individually and as Co-Trustee under the Will of John Scullin, Deceased (Defendants), Respondents,

Mary Denman Clark Wetmore, now Mrs. William T. Wetmore; Lenore Scullin Blair, now Mrs. L. Scullin Blair Darneille; Lenore Clark Steffens; Richard Clark, Also Known as Richard Carignani, Henry Woodward Green; Anne Eugenia Sullivan Gray, Now Mrs. William Ashley Gray, Jr.; John Scullin Sullivan; Mary Julia Sullivan McCloskey, Now Mrs. John J. McCloskey, Jr. (Defendants), Appellants, Rose Mae Andree De'Gheest (Defendant) Respondent.

Motion for Rehearing or for Transfer to Supreme Court Denied Jan. 17, 1958.

No. 29722.

St. Louis Court of Appeals.

Missouri.

Dec. 19, 1957.

Jacob M. Lashly, Arthur V. Lashly, Lashly, Lashly & Miller, St. Louis, for appellant Paul Bakewell, Jr.

R. Walston Chubb, Philip A. Maxeiner, St. Louis, for appellants Stella Wade Warren, Eugenia Scullin Bagnell and others (being all of the plaintiffs in the trial court except Paul Bakewell, Jr.) and on Behalf of appellants known as "concurring defendants".

Lewis, Rice, Tucker, Allen & Chubb, St. Louis, of counsel.

Henry Ravenel, Selby & Ravenel, Washington, D. C., for appellant Stella Wade Warren.

Thompson, Mitchell, Thompson & Douglas, Samuel A. Mitchell, James M. Douglas, William Stix, St. Louis, for respondent Mercantile Trust Co.

J. Porter Henry, Robert D. Evans, St. Louis, for respondent Thomas C. Hennings, Sr., Individually and as cotrustee under the will of John Scullin, deceased.

Daniel Bartlett, Sam Elson, St. Louis, for respondent Rose Mae Andree De'Gheest.

MATTHES, Judge.

This case comes to the writer on reassignment.

This is a declaratory judgment action to construe the will of John Scullin, particularly the third paragraph of Item II thereof, which provides for the appointment of a successor-trustee in the following language:

"In the event of the death of my son, or of the said Gilbert, or of the inability of them or either of them to act, or in the event of the retirement from business of the Mercantile Trust Company, or the removal of any of said trustees, then a successor or successors shall be appointed and such successor or successors shall have the same powers and authority that the original trustees have, and shall be charged with the same duties. *If all of the adults then receiving income hereunder at the time of the appointment agree upon a successor, then they may make such appointment,* by the execution of an instrument to that effect duly acknowledged and lodged with

the survivor or survivors, but if they cannot so agree, then the appointment shall be made by the court in due course." (Italics supplied.)

Construction of the will is necessary to determine whether Paul Bakewell, Jr., was validly and effectively appointed as co-trustee to serve with Mercantile Trust Company and Thomas C. Hennings, the other co-trustees. The trial court decreed that the appointment was invalid because Rose De'Gheest did not participate in the selection of Bakewell. From the judgment the plaintiffs and concurring defendants appealed to the Supreme Court. On motion of appellant Bakewell, opposed by the other appellants, that court transferred the cause to this court.

John Scullin died May 28, 1920. By his will all of his property was left in trust, to be held by his son Harry Scullin, Charles L. Gilbert and Mercantile Trust Company of St. Louis, Missouri, as trustees and by their successors in trust. The will provides that the trust shall continue during the lives of the survivor of all the surviving children of the testator, including Stella Wade Scullin, widow of Charles Scullin, a deceased son, and certain grandchildren and great-grandchildren then living, and for twenty-one years thereafter.

The will deals at length with directions to the trustees as to division and distribution of the income derived from the corpus of the trust. Out of the net income, the trustees were directed to pay a stipulated amount to one brother, and such amount as the trustees deemed sufficient to provide for the support of another brother and a sister, and to enable them to maintain a farm, not to exceed $300 per month. The trustees were required to distribute the rest and residue of the net income as follows: one-fourth to each of testator's children, Harry Scullin, May Eunice De'Gheest, and Lenore Madeline Clark, and to his daughter-in-law, Stella Wade Scullin, so long as each of them lived. The will directed that each "shall receive monthly One Thousand

Dollars ($1,000.00) on account of his or her share of income, and the excess to which they shall be entitled shall be ascertained at the end of each calendar year * * * and shall be paid to them." If the income of each part or share is less than $1,000 per month the trustees are authorized to encroach on the corpus to make up the deficiency. By paragraph (d) of Item II the testator provided that after the death of his son Harry the income shall be distributed by the trustees in six equal shares—one part to May Eunice De'Gheest or those succeeding to her interest; one part to Lenore Madeline Clark or upon her death to her daughter Mary Denman Clark and such other children as may be born to Lenore, or those succeeding to their interest; one part to Stella Wade Scullin and upon her death to her daughter Mary Lenore Scullin or those succeeding to her interest; one part to Harry's wife Julia so long as she lived; one part to each of Harry's daughters May and Eugenia. In this same clause provision was made that each part or share shall be at least $1,000 per month, payable monthly, and if the income was insufficient to permit payment of $1,000 monthly the deficiency shall be made up out of the corpus, but this provision for encroachment was to terminate after the death of Harry and his wife Julia and children May and Eugenia; of May Eunice De'Gheest; of Lenore Madeline Clark and her daughter Mary Lenore Scullin. Paragraphs (g) through (k) of Item II of the will specified who shall be the beneficiaries of the income upon the death of the primary beneficiaries therein named, except as to May Eunice De'Gheest's share of the income which the testator dealt with in paragraph (1) as follows:

"(1) Upon the death of my daughter May Eunice De'Gheest the part of the income which would have gone to her if living, shall be distributed by the trustees as follows: the trustees shall, during the life of the trust, have the power of appointment as to said share and shall distribute the same as they

may deem proper, 1st, either to my said daughter's husband Charles De'Gheest if living or to her son Harry De'Gheest if living or to Harry De'Gheest's descendants, or any of them, or 2nd, to my son Harry Scullin if living or if he be dead, to his wife and children or their descendants, and to my daughter Lenore Madeline Clark if living, or if she be dead, to her children or their descendants, and to my daughter-in-law Stella Wade Scullin if living, or if she be dead, to her daughter Mary Lenore Scullin or her descendants, until the termination of the trust. It shall be entirely optional with the said trustees to give as much or as little of the said part or share of income to May Eunice De'Gheest's husband or son or son's descendants, or any of them, as the trustees may deem proper, or they may distribute the whole or any part between them as the trustees may deem proper. Such power of appointment shall continue to exist from time to time until the end of the trust period, and the trustees may give to them, said May Eunice De'Gheest's husband or son or son's descendants, or any of them, the whole of such part or share of income or any portion thereof at any time or times, and thereafter discontinue the making of payments to them, or thereafter again resume the making of payments to them, as the trustees in their discretion may deem best. All income of the said part or share which the trustees from time to time do not see fit to give to May Eunice De'-Gheest's husband or son or son's descendants shall be given by the trustees to my son Harry if living, or if he be dead, to his wife and children or their descendants, and my daughter Lenore Madeline Clark if living, or if she be dead, to her children or their descendants, and to my daughter-in-law Stella Wade Scullin if living, or if she be dead, to her daughter Mary Lenore Scullin or her descendants, in

equal parts as provided in clauses (c) and (d) until the termination of the trust."

By paragraph 7 of Item II the testator directed that "The bequest of income in each of the following clauses shall be subject to the conditions mentioned in clause (O) hereinafter contained." (O) constitutes what is commonly referred to as a spendthrift clause, and provides that:

"(O) No person who takes any part of the income under this trust shall have any power or authority to sell, assign, pledge, transfer or dispose of such income or any part thereof, or to anticipate the same or any part of it, nor shall the same or any part of it be liable for his or her debts, nor shall the trustees have authority to recognize any transferee of any kind of interest in such income, * * *."

Pertinent to the main issue here presented is that portion of the will dealing with the effect of the exercise of the power of appointment of corpus or income. It reads as follows:

"* * * and such power of appointment with respect to the income shall only be exercised to create and pass a present vested interest immediately upon the exercise of the power, giving title absolutely and unconditionally with full right and power of alienation, control and disposition; and in no event shall said trustees be authorized to appoint to any person any interest in the corpus of this trust which shall take effect other than immediately upon and coincidently with the termination of this trust, but any appointment of any interest in the corpus, or any instrument by which such appointment is made, may be rescinded and a new appointment may be made by my said trustees at any time before the termination of the trust. My desire is to avoid the creation of any interest which will conflict with the law."

Appropriate reference will be made to other parts of the will in our consideration of the issues here presented.

John Scullin left surviving him his son Harry, two daughters, Lenore Madeline Clark and May Eunice De'Gheest (sometimes referred to in the record as Mme. De'Gheest), and a daughter-in-law, Stella Wade Scullin, widow of his predeceased son Charles. Harry died in 1947 and left surviving him his daughters Eugenia Scullin Bagnell and May Scullin Green. Lenore, one of the original plaintiffs, died in 1955 and since the filing of the petition herein, and left surviving her Mary Denman Clark Wetmore, a "concurring defendant." Paul Bakewell, Jr., and Mercantile Trust Company, as executors of the estate of Lenore Scullin Clark, were substituted as plaintiffs. Mary Scullin Green also died in 1955 and since the institution of this action, and left surviving her a son, Henry Woodward Green, also a "concurring defendant." The latter, as executor of his mother's estate was substituted as party plaintiff. Charles De'Gheest was the husband of May Eunice De'Gheest. To this marriage was born Harry, frequently referred to as Henri. Rose Mae De'Gheest is Henri's only child. Henri died in 1944 and predeceased his mother May Eunice who died in 1945.

The parties to this litigation are: Paul Bakewell, Jr., and Mercantile Trust Company as legal representatives of the estate of Lenore Scullin Clark, deceased; Henry Woodward Green, executor of May Scullin Green's estate; Stella Wade Warren and Eugenia Scullin Bagnell, daughter-in-law and granddaughter, respectively, of testator; and Paul Bakewell, Jr., one of co-trustees under the will, are plaintiffs. In addition to the Mercantile Trust Company and Thomas C. Hennings as co-trustees under the John Scullin will, the other defendants named in the caption, except Rose Mae De'Gheest, are all of the known adult contingent beneficiaries of shares of income under the John Scullin will. These parties are also designated as "concurring defend-

ants." Rose Mae De'Gheest is the remaining defendant. All of the plaintiffs and the concurring defendants are appellants. Defendants Mercantile Trust Company and Thomas C. Hennings as co-trustees under the John Scullin will and Rose Mae De'Gheest are respondents. Judge Hennings filed only a reply brief in which he refuted certain charges made in the De'Gheest brief.

For the sake of convenience, brevity, and understanding, we shall hereafter refer to appellant Paul Bakewell, Jr., as Bakewell; the remaining plaintiffs and those defendants who have appealed as appellants; respondent Mercantile Trust Company in its capacity of co-trustee as Mercantile; and respondent Rose Mae De'Gheest as Rose De'Gheest or Rose.

Following the death in 1937 of Charles Gilbert, one of the original trustees, all of the initial beneficiaries were living and agreed upon and appointed Thomas C. Hennings as successor co-trustee. The death of co-trustee Harry Scullin in 1947 provoked a controversy as to whether Rose De'Gheest was entitled to participate in the selection of the successor co-trustee. Lenore Scullin Clark was designated as successor to Harry Scullin by Mrs. Clark, Eugenia Scullin Bagnell, May Scullin Green, and Stella Wade Warren, but Mercantile refused to recognize the appointment until Rose De'Gheest, by separate letter to the other two trustees stated she was an adult beneficiary receiving income from the trust estate, and consented to Mrs. Clark's selection. By this procedure the dispute was resolved.

It stands conceded that income from the De'Gheest share collected by the trustees from and including 1945 to and including 1952 was distributed by them to Mme. De'Gheest or Rose, and the other beneficiaries in this manner: Of the 1945 income otherwise allocable to the "De'Gheest" share, $34,536.70 was paid to Mme. De'Gheest or her estate and $29,031.28 to Rose De'Gheest. Of the 1946 income allocable

to the "De'Gheest" share, $17,942.22 was paid to Rose De'Gheest and $18,192.22 each to Harry Scullin, Mrs. Clark, and Mrs. Warren. Of the share's 1947 income, $7,385.87 was paid to the estate of Harry Scullin, $4,500.17 to Mrs. Green, $4,500.16 to Mrs. Bagnell, and $12,493.82 each to Mrs. Clark and Mrs. Warren. Of the share's income for the years 1947 through 1952, the balance not paid to Rose De'Gheest was in each year divided equally among Mmes. Clark, Warren, Green, and Bagnell. Allocation of the share since 1945 is summarized in the following table:

| Date of Meeting of Trustees | Amount voted to Rose De'Gheest | Out of income for the year | Actually paid to Rose De'Gheest during | Balance of share divided among Mmes. Clark, Warren, Green, and Bagnell or their predecessors in interest |
|---|---|---|---|---|
| 1/11/46 | $29,031.28[1] | 1945 | 1946 | ------- |
| 12/31/46 | 17,942.22 | 1946 | 1947 | $54,576.66 |
| 4/28/48 | 17,942.22 | 1947 | 1948 | 41,373.84 |
| 2/23/49 | 9,720.00 | 1948 | 1949 | 45,633.47 |
| 1/25/50 | 10,000.00 | 1949 | 1950 | 47,746.48 |
| 1/31/51 | 12,000.00 | 1950 | 1951 | 56,807.58 |
| 12/26/51 | 18,000.00 | 1951 | 1952 | 43,179.92 |
| 1/14/53 | 25,000.00 | 1952 | 1953 | 32,832.24 |

On February 13, 1953, Lenore Scullin Clark, because of physical infirmities which rendered her unable to function as co-trustee, tendered her resignation to become effective "when all the adults now receiving income under said Trust have agreed, in writing, that Paul Bakewell, Jr., * * * shall become Successor-Trustee of said Trust, * * *." It appears that Bakewell had been attorney for Mrs. Clark in the two prior suits brought to secure construction of the same will. See Scullin v. Mercantile-Commerce Bank & Trust Co., Mo.Sup., 234 S.W.2d 597; Scullin v. Clark, Mo.Sup., 242 S.W.2d 542. Prior to February 27, 1953, Bakewell entertained the opinion that Rose De'Gheest was an adult receiving income within the meaning of the will, and a necessary participant in the selection of a successor co-trustee, in fact, on February 3, 1953, when he admittedly was familiar with the Scullin will, Bakewell prepared forms for execution by all income beneficiaries, including Rose, whereby his appointment as successor co-trustee would be effected. After this document was signed by four income-receiving beneficiaries, not including Rose De'Gheest, it was sent by Bakewell on February 27, 1953, to Mercantile. Between that date and February 27, 1953, efforts were made by Bakewell through Mercantile and Rose's lawyer, to secure her consent to Bakewell's appointment. As late as February 26, Bakewell wrote Rose's lawyer, stating, in part: "I am in accord with your view that no appointment of a successor trustee can be made by agreement of the parties unless the agreement be made by the five parties now receiving income under the will, including Miss De'Gheest." Being of the opinion that Bakewell was not impartial because of his prior representation of Mrs. Clark, Rose would not concur in Bakewell's appointment and on February 24, 1953, Mercantile advised Bakewell by letter that Rose refused to join in any agreement appointing him as successor co-trustee. It does not appear when this letter was received by Bakewell, but, on February 27, 1953, he

---

1. Mme. De'Gheest died in 1945. Of the 1945 income $3,000.00 was paid to her and $31,536.70 to her estate.

wrote to Rose's lawyer advising that "further study of the precise language of other portions of the Will has changed my opinion" and caused him to conclude that Rose's agreement was unnecessary to his appointment.

Thereafter, Mercantile refused to recognize Bakewell as a co-trustee and when administration of the trust came to a standstill, this action resulted.

On March 6, 1954, the Court entered an order pending final judgment in the case, appointing Bakewell as co-trustee and directed him as co-trustee pendente lite, jointly with Mercantile and Judge Hennings to perform "all the duties and obligations which should have been performed under the terms of the said will of John Scullin, deceased, since February 19, 1953." The order was entered "without prejudice to the claims or contentions * * *" of the parties hereto, and provided further that all acts of said trustees and of Bakewell as co-trustee pendente lite shall be done by them without prejudice to the respective claims and contentions of the parties to this action.

Bakewell and appellants contend that consideration of the will in its entirety compels the conclusion that Rose De'Gheest was not and could not be an adult, " * * * then receiving income hereunder at the time of the appointment * * *," and that her consent was not a prerequisite to the valid appointment of Bakewell as successor co-trustee. Mercantile and Rose are equally emphatic in asserting that Rose met the qualifications imposed by the testator upon those who are vested with authority to appoint successor trustees, and that Bakewell's selection, without her agreement, was invalid. In exhaustive briefs consisting in the aggregate of 338 pages, able counsel have advanced arguments designed to support their respective contentions. Before resolving the basic question we shall give attention to the rules of construction or legal principles which must be applied in determining the cause.

Fundamentally and always the cardinal rule in construing a will is that the intent of the testator must be ascertained and determined and, if possible, from a consideration of the instrument—not in parts, but as a whole, or from its four corners. Hereford v. Unknown Heirs, Mo.Sup., 292 S.W.2d 289, 293; Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S.W.2d 39, 41; St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S.W.2d 344, 349; First Trust Co. v. Myers, 351 Mo. 899, 174 S.W.2d 378. When the testator's intent is discovered, any question concerning the meaning of the will disappears, unless that intent runs counter to an inflexible rule or public policy. Burnet v. Burnet, 244 Mo. 491, 497, 148 S.W. 872, 874; Broaddus v. Park College, 238 Mo. App. 304, 180 S.W.2d 268, 270; Scullin v. Mercantile-Commerce Bank & Trust Co., Mo.Sup., 234 S.W.2d 597, 602. In an effort to ascertain the testator's intent the Court may, so far as possible, place itself in the testator's position and view the facts from his standpoint. Broaddus v. Park College, 238 Mo.App. 304, 180 S.W.2d 268, 270 and cases there cited. When the will expresses the intent of the testator in clear and unequivocal language there is no room for construction, but when considered as a whole and read from the four corners, it appears that the terms of the will are not so plain and unambiguous as to leave no room for doubt, then resort may be made to auxiliary rules of construction and the court has a right to consider the circumstances surrounding the testator at the time of the execution of the will. Gannett v. Shepley, 351 Mo. 286, 172 S.W.2d 857; Winkel v. Streicher, Mo.App., 287 S.W.2d 389, 392, reversed on other grounds 365 Mo. 1170, 295 S.W.2d 56; Scullin v. Mercantile-Commerce Bank & Trust Co., supra. We are not permitted to rewrite the will in question under the guise of construction because our prime duty and sole function is to construe the instrument, " * * * our function is that of construction, not *reconstruction,* of the will." Mercantile-Commerce Bank & Trust Co. v.

Binowitz, Mo.App., 238 S.W.2d 893, 897. See also Scullin v. Mercantile-Commerce Bank & Trust Co., supra, 234 S.W.2d 597, 602; 95 C.J.S. Wills § 590.

█ Although reported will construction cases are legion, we recognize that by reason of the infinite variety of expressions employed in wills, precedents are of less value in their construction than in many other fields of litigation. Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23 and cases there cited; Hereford v. Unknown Heirs, supra, 292 S.W.2d 289, loc. cit. 293; In re Yeater's Trust Estate, Mo. App., 295 S.W.2d 581, 588.

Of the theories advanced by appellants in support of the basic and underlying contention one is that the amounts which have been appointed by the trustees to Rose De'Gheest from January 11, 1946, to and including January 14, 1953, as shown by the table above set out, did not constitute "income" within the meaning of testator when he provided that "adults then receiving income hereunder at the time of the appointment" etc. may make appointment of a successor co-trustee. Their brief demonstrates their position in this language:

"While it is possibly colloquial to refer to distributive shares of the income of a trust as 'bequests,' it is quite clear that under no circumstances, colloquial or otherwise, would it be proper to refer to moneys left to Trustees, subject to their powers of appointment, entirely optional and discretionary, as bequests *to the appointees of the power*. Is is not clear that the clause 'adults then receiving income *under the will*' was used deliberately to distinguish between the descendants of the testator who were entitled to receive income *under the will*, that is to say, directly and as of right, from the discretionary appointees of the power, who received distributions out of a share of the income only after the intermediate

action and intervention of the Trustees? This is especially true where this class of beneficiaries was not receiving such income currently under the will and under provisions where, absent any action of the Trustees appointing such income, it went directly as of right, not to the DeGheests, but to the other 'legatees' of the income.

"There is much in this will to indicate that this testator did not conceive of the DeGheest descendants as receiving income under the will. He conceived of his Trustees standing in his own shoes, *and making gifts under an independent power, not governed or controlled by the will.*" (Italics in this paragraph supplied.)

While Bakewell does not go so far as to urge that after the De'Gheest share of the income went into the hands of the trustees it lost its identity as income, he, along with appellants, advance the argument that "John Scullin, by apt and appropriate language, restricted the exercise of the power to appoint income so that one who took by virtue of the exercise of that power could never come within his precise description of those to whom he gave the power to appoint successor trustees." To substantiate this contention it is said that under paragraph six of Item II of the will the power to appoint income can "only be exercised to create and pass a present vested interest immediately upon the exercise of the power, giving title absolutely and unconditionally with full right and power of alienation, control and disposition; * * *." That since the trustees were given the "power of appointment of income" which in their absolute and uncontrolled discretion they could exercise or not, Rose could never have a right to income or could never receive income; that when testator provided that "such power of appointment * * * shall only be exercised to create and pass a present vested interest immediately upon the exercise of the power * * *," this had the effect each time the power was exer-

cised, of extinguishing any rights or interest that the De'Gheest descendants might otherwise have in the De'Gheest share of income, and that consequently Rose could not have been receiving income at the time of Bakewell's appointment as a successor co-trustee and her agreement thereto was wholly unnecessary.

■ Careful and critical analysis of the will in its entirety for the purpose of ascertaining testator's meaning and intent when he entrusted the appointment of successor trustees to "adults then receiving income hereunder at the time of the appointment" compels the conclusion that the foregoing theories are tenuous, unrealistic and lacking in merit. Appellants' contention that the amounts appointed to Rose Scullin were not and could never be *income* under the will, runs headlong into John Scullin's conception of all payments made by the trustees, whether resulting from absolute bequests or discretionary bequests of income. For in paragraph seven of Item II of the will it is provided: "The bequest of *income* in each of the following clauses shall be subject to the conditions mentioned in clause (o) hereinafter contained." [(o) is spendthrift clause.] Clause (L) which controls disposition of the De'Gheest share of income after death of May Eunice De'Gheest follows and is one of the "clauses" dealing with the disposition of income. Moreover, in clause (L) testator again characterized payments appointed to the De'Gheest descendants as *income* in this language: "Upon the death of my daughter May Eunice De'Gheest the part of the *income* which would have gone to her if living, shall be distributed by the trustees as follows: etc. * * * It shall be entirely optional with the said trustees to give as much or as little of the said part or share of *income* to May Eunice De'Gheest's husband or son or son's descendants, * * *." Without setting out the remainder of the clause verbatim it is sufficient to say that following the above quoted portion thereof the testator again

used the word *income* on two occasions to demonstrate that he considered and regarded payments made by the trustees as *income* from the De'Gheest share. We find no support for the assertion that after the trustees exercised their power to appoint, the amount appointed lost its identity as *income* and took on another indescribable nature. The testator considered any and all amounts which the trustees appointed as income; payments set apart to Rose over the years had their source in income, and their passage through trustees' hands did not alter the character of what Rose eventually received.

■ Neither are we impressed with the suggestion that the will demonstrates that testator meant that only those beneficiaries "entitled to receive income" could participate in appointing successor trustees. The main premise for this argument is the spendthrift clause which prohibits any person who takes *"income* under this trust" from selling, assigning, etc., such *income.* It is said that this clause is without meaning unless it refers "not to income itself" but "to the right to receive income," and that the testator was desirous of preventing an assignment of the *right* of those entitled to income, not the income when taken." Having so construed that portion of the will appellants say, "A consistent construction of this term requires that construction of other uses of the word income in the will, as in the phrase 'adults then receiving income hereunder' be similarly construed and that the testator had the same thing in mind, namely, 'the right to receive income.'" Although the spendthrift clause, under proper circumstances might receive the interpretation contended for, which we do not decide, it by no means follows that we have the right, through the guise of judicial construction, to reform, reconstruct or change the language of the questioned phrase so that it would provide that "adults *entitled to receive* income hereunder" are qualified to appoint successor trustees. Testator did not see fit to so

draft his will and we find nothing therein which would warrant us in ascribing such an intention to him.

■ As we have observed, Bakewell and appellants focus attention on another clause of the will (paragraph six of Item II) to prove that what Rose has received over the years is not "income" at all. They put forth the contention that this clause which provides that the power to appoint income "shall only be exercised to create and pass a present vested interest immediately upon the exercise of the power" is part and parcel of the plan and scheme of testator designed to reveal his real intent; namely, to forever eliminate the De'Gheest descendants from the category of "Adults receiving income hereunder." We are of the opinion this clause was included in the will for a wholly different purpose. Indeed, in the sentence following the provision under consideration testator states his real intent in these words: "My desire is to avoid the creation of any interest which will conflict with the law." We are convinced and hold that the testator's only purpose in providing that title to appointed income would vest in the appointee immediately upon the power being exercised, was to carefully guard against a violation of the rule against perpetuities.

Supplementing the point that Bakewell's appointment was valid without Rose's agreement thereto, the contention is made that the power to appoint income could be exercised only by the joint action of three trustees; that since a vacancy existed by reason of Mrs. Clark's resignation the two remaining trustees were wholly without authority to appoint income to Rose in February, 1953, when Bakewell was selected by the other beneficiaries. Bakewell's position in this regard is:

"The testator's plan to exclude the De'Gheest descendants from participation in the selection of successor trustees may be expressed in the following syllogism:

"Major premise: A successor trustee could not be appointed unless a vacancy existed.

"Minor premise: When a vacancy existed, the power to appoint income could not be exercised.

"Conclusion: Therefore, Rose De'Gheest could never be receiving income at the time of appointment of a successor trustee."

This is but another way of again asserting that the precise time of appointment of income controls, and that unless income was actually appointed to Rose on the very day that the beneficiaries exercised their power, she could not be a member of the class constituted to appoint the successor trustee.

■ A painstaking study of the Scullin will, according all of its terms and provisions a fair and reasonable interpretation, English v. Ragsdale, 347 Mo. 431, 147 S.W. 2d 653; Mercantile-Commerce Bank & Trust Co. v. Binowitz, Mo.App., 238 S.W. 2d 893, drives us to the conclusion that the foregoing contention is opposed to testator's real meaning and conception of the phrase " * * * all of the adults then receiving income hereunder at the time of the appointment * * *." Much emphasis is attached to the word "then" by Bakewell and appellants, who insist that it can only refer to the time of appointment. However, it is readily apparent that, if testator meant that the power to designate a successor trustee could be exercised only at the precise time income was received by the beneficiaries, it was wholly unnecessary for him to include the word "then" in the phrase, for the same meaning would obtain in its absence. Moreover, to attribute the meaning to the phrase contended for by Bakewell and appellants might present a question as to whether the other beneficiaries of income could qualify for appointment of a successor trustee. This is so because they received payments from income only once a month, and even they were not *receiving* income on the exact

day that they undertook to appoint Mr. Bakewell. It is obvious to us that testator, shown to be a man of wisdom and vision, never intended that such a thin and narrow interpretation should be placed on the language he employed. A more realistic and common sense approach to the problem convinces us that testator meant to include those beneficiaries who were *in fact* receiving payments from the trust income. And it is more logical that the word "then" was used to differentiate between current and prospective beneficiaries. It is an admitted fact that Rose De'Gheest has been receiving a portion of the De'Gheest share of income every year continuously since 1946, and that on January 14, 1953, the month preceding the controverted appointment, she was paid $25,000 out of 1952 income. It is therefore our opinion that she qualified for participation in the appointment of a successor to Mrs. Clark.

The contention is also made that consideration of the circumstances surrounding the testator at the time the will was drawn reveals that John Scullin never intended that the De'Gheest descendants should participate in the appointment of successor trustees. In the main the circumstances relied on were these. May Eunice (Mme.) De'Gheest and her husband Charles lived in France. Both Henri, their son, and Rose, Henri's daughter, were born in that country. It appears that Henri's habits and conduct, known to testator, were not at all times exemplary. Following World War I Henri did not pursue any gainful business or occupation. One witness stated, "He was quite a spendthrift, to put it mildly," and that he "was given to drink rather heavily, and he, perhaps, had other bad habits, perhaps, immoral at times." From these facts appealing parties reason that testator could not have had any confidence in Henri, and that it is inconceivable that testator meant that Henri should have a voice in appointing or vetoing the appointment of successor trustees who are charged with the grave responsibility of administering the large trust estate.

Inasmuch as testator's intent clearly appears from the will itself, it is hardly necessary to give further attention to the foregoing "surrounding circumstances," but if considered they would not destroy the conclusions we have reached. While it may be fairly inferred that because of Henri's spendthrift propensities, testator was motivated in treating the De'Gheest descendants differently than the other branches of his family, the indisputable fact is that testator did not disqualify Henri or other De'Gheest descendants who receive income from the trust estate from participating in the appointment of successor trustees. The will presents ample and conclusive proof that John Scullin was capable of intelligently dealing with the immediate members of his family and their descendants in a manner which he felt would promote their welfare. He not only left his entire estate in trust, but set up rather elaborate and detailed provisions designed to furnish protection to Henri from his own weaknesses—but, and this is of vital importance—he did not confine the power to appoint successor trustees to the other branches of the family who were the recipients of income from the trust. He chose to and did include *all adults then receiving income hereunder*. How simple it would have been for John Scullin in clear and explicit language to have provided that "in no event shall the De'Gheest descendants or any of them participate in the appointment of successor trustees." That he did not so provide, although he was aware of Henri's unstable character, convinces us that it would be repugnant to his intention to so construe his will.

An attack is also made upon certain portions of the decree. First, it is contended that the court erred in finding and holding that the exercise of the discretionary power to appoint income must be just and equitable and within the bounds of reasonable judgment. A review of the pleadings and relief sought, pertinent to the instant point, may prove helpful to a proper understanding of this assignment.

The petition prayed for a determination of the question of the validity and completeness of the appointment of Paul Bakewell, Jr., as successor co-trustee. Mercantile's answer, counter and cross-claim broadened the issues by seeking instructions, inter alia, as to whether Rose De'Gheest was absolutely entitled to the De'Gheest share of income; if not, whether the trustees have the right to be arbitrary in allocating the discretionary share or whether they must exercise judgment in so doing, and, in the latter event, what "kinds of factors the trustees should and may give consideration to in allocating the discretionary share." Judge Hennings' answer, although alleging the differences of opinion existing among plaintiffs and some of the defendants, including one of the co-trustees, as to the proper construction of parts of the Scullin will, confined the relief sought to determination of the validity of Bakewell's appointment. Rose De'Gheest's answer, counter-claim and cross-claim also tendered issues beyond those raised by the petition. We shall give notice only to the relief she sought which is apropos to that portion of the decree under question. She prayed for a finding that she was absolutely entitled to the full share of the De'Gheest share of income; that if not so entitled, the power of appointment of income cannot be exercised in an arbitrary manner but only through sound discretion on the part of the trustees.

In paragraph seven of the decree, the court found that Rose does not have an absolute right to the full De'Gheest share of income of the trust estate "To hold to the contrary, the court would be compelled to ignore the expressed intention of the testator as set out in Item II, Section (L) of the will of John Scullin, deceased, which reads as follows:" (Here decree incorporates that portion of the will setting forth power of trustees which appears supra.) In paragraph 8, the court found with reference to the requests of Rose De'Gheest and Mercantile for a ruling on the nature of the discretion to be exercised by the trustees, that the power of appointment contains no directions, conditions or standards for the exercise of that power; that because successor trustees may be appointed and in view of the impersonal character of the corporate trustee, the power is not personal to the original trustees; that since there is a provision for disposition to "takers in default" of any part of the De'Gheest share of income not appointed to the De'Gheest descendants, and because of the absence of express directions the court cannot substitute its judgment for the judgment of the trustees. Following the foregoing findings with which none of the parties finds fault, the court made this declaration which has provoked the trouble:

"* * * however, there is a duty upon the trustees to exercise the power conferred upon them in accordance with the well-established standards imposed by law upon the conduct of all trustees and appointees of powers. In the execution of discretion conferred upon trustees with a power of appointment, as provided for in the Scullin will, under the law as decreed by the Supreme Court of Missouri, its exercise must be in good faith and from proper motives, *must be just and equitable and within the bounds of reasonable judgment.*" (Italics supplied.)

In essence, the charge is made that the foregoing provision of the decree, particularly the italicized part, is contrary to the will and the applicable legal principles for the reasons: (1) the trustees' discretion is absoute and uncontrolled and (2) when testator granted full discretion the standard of reasonableness was dispensed with, and a review of the reasonableness of the trustees' exercise of discretion may not be submitted to the courts. Mercantile and Rose predicate their defense of the findings on the premise that the trustees do not possess uncontrolled, absolute or final discretion, and that in exercising the power of appointment of income the trustees must use judgment and cannot be arbitrary.

■ The rule is firmly established that where the discretion conferred upon the trustee is "absolute" or "uncontrolled" the standard of reasonableness is dispensed with. Winkel v. Streicher, Mo.App., 287 S. W.2d 389, 392. In considering the same case on transfer, the Supreme Court said, 295 S.W.2d 56, 58, "We agree with defendants' contentions that sole discretion vested in a trustee by a will is a matter of his own personal judgment which a court cannot control and exercise for him but may only prevent abuse of discretion, arbitrary or fraudulent action." In Lyter v. Vestal, 355 Mo. 457, 196 S.W.2d 769, 772, 2 A.L.R. 2d 1375, the Supreme Court in considering the effect upon the trustees' discretion of a provision that the trustees' determination of the necessity and propriety of withdrawals and the amount thereof *"shall be final"* stated: "Dr. Lyter did not submit the review of the reasonableness of the trustees' exercise of discretion to the courts * * * But it will not be our construction that the trustees in exercising the power are not otherwise subject to control by the courts. Such absolute discretionary power is ordinarily construed as merely dispensing with the standard of reasonableness. Vol. I, Restatement of the Law of Trusts, § 187, Comment j, pp. 488, 489." Restatement, in the section cited in Lyter, announces the principle in this language: "The settlor may, however, manifest an intention that the trustee's judgment need not be exercised reasonably * * *. This may be indicated by a provision in the trust instrument that the trustee shall have 'absolute' or 'unlimited' or 'uncontrolled' discretion. These words are not interpreted literally but are ordinarily construed as merely dispensing with the standard of reasonableness." See also Brownell v. Mercantile Trust Co., D.C.E.D.Mo.E.D., 139 F.Supp. 834. In re Sullivan's Will, 144 Neb. 36, 12 N.W.2d 148; Nossaman on Trust Administration and Taxation § 443; Scott on Trusts, Second Edition, Vol. II, § 187.2, pp. 1388, 1389; In re Estate of Heard (Heard v. Bank of America National Trust & Sav-

ings Ass'n), 107 Cal.App.2d 225, 236 P.2d 810, 27 A.L.R.2d 1313. The authorities are likewise in accord that even though the standard of reasonableness is not imposed upon the trustees, the discretion, broad though it is, cannot be exercised in a wholly unbridled manner. The trustees are required to act in a state of mind contemplated by the testator, and they are not permitted to function fraudulently, dishonestly, arbitrarily, in bad faith or from improper motives. Winkel v. Streicher, supra, 287 S.W.2d 389, 392; Lyter v. Vestal, supra; Scott on Trusts, Second Ed., Vol. II, § 187.2, pp. 1388, 1389; Nossaman on Trust Adm. I, § 443, pp. 478, 479; In re Estate of Heard (Heard v. Bank of America National Trust & Savings Ass'n), supra; In re Sullivan's Will, supra; Restatement of Law of Trusts, Vol. I, § 187j, pp. 488, 489.

■ The decree properly imposed upon trustees the duty to exercise the discretion conferred upon them "within the bounds of reasonable judgment." For we are convinced that the testator did not manifest an intention that the trustees shall have "absolute" or "uncontrolled" or "unlimited" discretion, or that their acts shall be "final." Testator directed that "It shall be entirely optional with the said trustees to give as much or as little * * * to May Eunice De'Gheest's husband, etc. * * * as the trustees may deem proper, or they may distribute the whole or any part * * * as the trustees may deem proper. * * * and the trustees may give to them * * * the whole of such part or share of income * * * at any time or times, and thereafter discontinue the making of payments to them, or thereafter again resume the making of payments to them as the trustees in their discretion may deem best." There is no room to doubt that the testator meant to and did give the trustees broad powers. This is conceded. But there is no legitimate basis for holding that the trustees' exercise of such power shall be "uncontrolled" or "absolute" or "unlimited." Careful as the testator was in vesting trustees with wide discretion, he was equally

cautious not to label or designate the powers in such terms as to clearly manifest an intention that trustees are not to apply the standard of reasonableness in their decisions.

■ There is sound authority for holding that the trust document must clearly disclose that the settlor intended that the trustees' judgment cannot be questioned for reasonableness. Thus in Restatement, Trusts, § 187, j, it is said: "This may be indicated by a provision in the trust instrument that the trustee shall have *'absolute'* or *'unlimited'* or *'uncontrolled'* discretion." In Lyter v. Vestal, supra, 355 Mo. 457, 196 S.W.2d 769, 772, it is pointed out that the will provided that trustees' determination *"shall be final."* (Italics supplied.) Professor Scott in his treatise on trusts, Vol. II, § 187.2, p. 1388, states: *"By the terms of the trust* the requirement of reasonableness in the exercise of a discretionary power by the trustee may be dispensed with." In Brownell v. Mercantile Trust Co., D.C., 139 F.Supp. 834, 836, the acts of the trustees *"shall be final and conclusive* and said Trustees shall not be held accountable to any one for their acts \* \* \*." (Italics supplied.) See also and compare, In re Sullivan's Will, 144 Neb. 36, 12 N.W.2d 148, Annotations 27 A. L.R.2d § 5, pp. 1331–1337.

Neither may we indulge in the presumption that testator intended to clothe the trustees with uncontrollable powers. The rule of construction is to the contrary. "While the terms of a trust may vest discretionary power in a trustee, and while limitations on the powers of a trustee will be strictly construed, a court of equity will never favor a construction that confers \* \* \* absolute and uncontrollable powers, since such powers are inconsistent with the existence of a trust." 54 Am.Jur. (Trusts) § 293.

■ · With respect to that portion of paragraph 8 of the decree which provides that trustees' exercise of the discretion conferred upon them, *"must be just and equi-table,"* a different situation prevails. In so adjudicating it cannot be disputed that the court prescribed a standard for the conduct of the trustees nowhere found in the will. Mercantile, in its brief makes no effort to defend the decree in this respect. Rose, through her counsel, devotes nearly thirty-four pages of brief in the defense of the whole of paragraph 8, but we do not understand from the numerous authorities cited by her, that trustees in the exercise of discretionary powers such as are here involved, "must be just and equitable." We are of the opinion that such language in the decree could well cause confusion and controversy in the future; indeed, the trustees might well interpret the phrase as an implicit suggestion that they must, irrespective of any and all circumstances, appoint income to Rose De'Gheest. Paragraph 8 of the decree is modified by striking therefrom the words "must be just and equitable."

Because of a controversy focused on the right of trustees Mercantile and Judge Hennings to act when the vacancy occurred on account of the disability of Mrs. Clark, Mercantile requested instructions in that regard. The Court decreed that whenever there is a vacancy in one or more of the trusteeships by reason of death or inability to act, the remaining trustee or trustees have the power and duty to take any and all action authorized by the will and which is necessary in the administration and protection of the trust "excluding exercise of the power of appointment."

■ None of the parties complains of this adjudication except Bakewell, who asserts that this finding is contrary to the rule as announced in Scullin v. Clark, Mo. Sup., 242 S.W.2d 542, involving the same will; Lyter v. Vestal, 355 Mo. 457, 196 S.W.2d 769, 771; and Bogert on Trusts, § 554. In the Scullin and Lyter cases the Supreme Court reannounced the settled principle that when there are two or more trustees, the powers conferred upon them can properly be exercised only by all the trustees, unless the trust instrument pro-

vides otherwise. The theory is that they form but one collective trustee. We are not at odds with this rule, but it has no application to the instant situation for in those cases the court was not concerned with the authority and power of surviving or remaining trustees. The principle which is decisive of our problem is to be found in Restatement of the Law of Trusts, Vol. I, § 195; 90 C.J.S. Trusts § 258, p. 295; 54 Am.Jur., Trusts, § 297; Scott on Trusts, Vol. II, § 195; Nossaman, Trust Adm. I, § 392. From the foregoing it will be seen that in general, where there is a multiple trusteeship, the surviving co-trustees are authorized and empowered to exercise trust powers, unless it is otherwise provided by the instrument creating the trust, or unless the trust is purely a personal one clearly intended to be executed only by the persons named. We do not understand Bakewell to contend that either of the exceptions exists, and it is obvious that they do not. Accordingly, we hold the court properly ruled the question.

Finally, the contention is made by appellants that the court erred in directing the trustees, upon final determination of this cause, and when a successor to Mrs. Clark has been appointed, to determine "what additional sum or sums, if any, should have been paid to defendant Rose De'Gheest out of the said De'Gheest share of the income of said trust for the years 1953–54–55, and pay to her * * * any sum or sums so determined out of the amounts heretofore reserved by the trustees under orders of this court."

Following the order appointing Bakewell as co-trustee pendente lite, Rose received the sum of $25,000 in each of the years 1954, 1955 and 1956 out of the De'Gheest share of income collected in the year immediately prior to the time of appointment of such amount. It is disclosed that on each occasion the payment was made as the result of unanimous agreement by the trustees. They met and adopted a resolution reciting appointment of $25,000 to Rose (without prejudice to her claim or the claims of

Mesdames Clark, Warren, Green and Bagnell) and that because of the pendency of this case, the balance of the one-fifth share of income would be held by them subject to final determination of the cause. Thereafter the trustees sought and obtained a judicial approval of their retention of such excess, by order which authorized them to pay all income taxes determined by the trustees to be payable on account of the amount so retained.

Appellants insist that Rose received payments of income because of positive action by the trustees; that appointment of such income resulted from agreement of and the exercise of discretion by the trustees; and that the court was without authority, on final determination, to subject their action to review. Rose is diametrically opposed to this position. She argues that the court "had determined and fixed the amount to be allocated to Rose during the pendency of the litigation on a purely interim basis * * *," and she also asserts that since the amount was appointed without prejudice to her claim, the court had the power, and equitable considerations require review of the allocations when there are three trustees properly appointed under the will. It is apparent that resolution of the question depends upon the effect of the order of the court appointing Bakewell, the ensuing action of trustees and the court's orders dealing with retention of excess of De'Gheest share of income.

We are mindful that Rose, in her cross-bill claimed that she was entitled, as a matter of right, to one-fifth of the income. This contention was decided against her and she makes no complaint on this score. With this issue in the case the trustees could not with impunity distribute to the takers in default the amount remaining after the payments to Rose. So they applied for and obtained judicial approval of their decision to retain such excess. But there is nothing in the three formal orders authorizing and sanctioning this procedure, to support the contention that by paying Rose $25,000 each year the trustees were merely complying

with the court's direction. To the contrary, the record supports the conclusion that the court intended that the trustees should, and they in fact did exercise their discretion in allocating such payments to Rose. In appointing Bakewell as co-trustee pendente lite, the court was specific in directing him, jointly with Mercantile and Judge Hennings to perform the duties and obligations which should have been carried out under the will. Following this mandate the trustees "met and unanimously resolved" on the three occasions to appoint income to Rose out of the De'Gheest share. At no time did the trustees seek court approval of this action. They sought and obtained judicial protection of their decision to retain the balance of the income remaining after appointment of income to Rose.

It is quite clear that following the institution of this action, the parties and the court were confronted with the question of the authority of Mercantile and Judge Hennings to administer the trust estate. Judge Hennings filed a motion praying for instructions to the two trustees; Mesdames Clark, Warren, Green and Bagnell prayed for appointment of Mr. Bakewell as co-trustee pendente lite. Rose prayed that an order be entered directing that Mercantile and Judge Hennings be directed to perform pendente lite all ministerial acts necessary in administration of estate, and that if any disagreement arose between them the court should, by appropriate instructions direct the trustees how to proceed. The court chose to fill the vacancy pending final outcome, by appointing a co-trustee pendente lite, and in so doing the affairs of the trust estate, and the administration thereof, including appointment of income to Rose was left to the judgment and discretion of the three trustees. Under the circumstances we hold that the acts of the trustees in appointing income to Rose are not subject to review by the trustees following final determination of this cause and after a successor to Mrs. Clark has been appointed.

Accordingly, paragraph 12 of the decree should be and the same is stricken, and in lieu thereof the following is inserted:

12. Upon a final determination of this cause, the balance of the De'Gheest share of income for the years 1953, 1954 and 1955 remaining after payment of the sum $25,000 for each of said years to Rose De'Gheest, shall be paid by the trustees to the same persons and in such proportions as the persons to whom and the proportions in which such amounts would have been paid if such amount had not been retained by the trustees pending final determination of this cause; provided, that if any person entitled to a distributive share shall have died, distribution shall be made to his or her executor or administrator.

The decree, as modified herein, is affirmed.

RUDDY, P. J., and ANDERSON, J., concur.