Paul BAKEWELL, Jr., and Mercantile Trust Company, Executors of the Estate of Lenore Scullin Clark, Deceased; Henry Woodward Green, Executor of the Estate of May Scullin Green, Deceased; Stella Wade Warren and Eugenia Scullin Bagnell, Beneficiaries Under the Will of John Scullin, Deceased; and Paul Bakewell, Jr., One of the Co-Trustees Under the Said Will, Plaintiffs-Appellants,

v.

MERCANTILE TRUST COMPANY, Individually and as Co-Trustee Under the Will of John Scullin, Deceased; Thomas C. Hennings, Individually and as Co-Trustee Under the Will of John Scullin, Deceased, Defendants-Respondents,

Mary Denman Clark Wetmore, Now Mrs. William T. Wetmore; Lenore Scullin Blair, Now Mrs. L. Scullin Blair Darneille; Lenore Clark Steffens; Richard Clark, Also Known as Richard Carignani; Henry Woodward Green; Anne Eugenia Sullivan Gray, Now Mrs. William Ashley Gray, Jr.; John Scullin Sullivan; Mary Julia Sullivan McCloskey, Now Mrs. John J. McCloskey, Jr., Defendants-Appellants, Rose Mae Andree De'Gheest, Defendant-Respondent.

No. 46807.

Supreme Court of Missouri,

En Banc.

Dec. 8, 1958.

Rehearing Denied Jan. 12, 1959.

R. Walston Chubb, Dominic Troiani, St. Louis, for appellants, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, of counsel.

Henry Ravenel, Selby & Ravenel, Washington, D. C., for appellant Stella Wade Warren.

Jacob M. Lashly, Arthur V. Lashly, Lashly, Lashly & Miller, St. Louis, for appellant Paul Bakewell, Jr.

Thompson, Mitchell, Thompson & Douglas, Samuel A. Mitchell, James M. Douglas, William Stix, St. Louis, for respondent Mercantile Trust Co.

J. Porter Henry, John Raeburn Green, Robert D. Evans, St. Louis, for respondent Thomas C. Hennings, Green, Hennings, Henry & Evans, St. Louis, of counsel.

Daniel Bartlett, Sam Elson, St. Louis, for respondent Rose Mae Andree De'- Gheest.

WESTHUES, Judge.

The parties to this litigation, by their pleadings, ask for a construction of the last will and testament of John Scullin, deceased. The will was dated February 26, 1920, and the testator died that same year on May 28, 1920. By his will, Scullin left all of his estate in trust for the benefit of his relatives. Three trustees were named to administer the trust which was to terminate 21 years after the death of the last beneficiary of the trust living at the time of the death of the testator. By the will, the testator provided a method of selecting a trustee in case of a vacancy so that at all times there should be three trustees.

The primary object the plaintiffs seek is to determine who, under the provisions of the will, are qualified to participate in the selection of a successor-trustee when a vacancy occurs. A further question for determination presented by other pleadings is the extent of the powers of the trustees and whether the actions of the trustees in certain respects are subject to review in the courts.

■ The case was tried in the Circuit Court of the City of St. Louis and on appeal to the St. Louis Court of Appeals, that court rendered an opinion affirming, with some modification, the decree of the Circuit Court. On application, the case was ordered transferred to this court. The opinion of the court of appeals is reported in 308 S.W.2d 341. In its opinion, that court stated the facts and circumstances in detail and reviewed the applicable law thoroughly. On transfer of a case from a court of appeals to this court, the case is considered de novo in this court. In view of the exhaustive review of the law in the opinion of the court of appeals, it should not be necessary for this court to duplicate that task. For a complete statement of the case, we refer the reader to that opinion. Furthermore, we shall not restate many of the reasons given by the court of appeals for its rulings. Rather, we shall add a few comments of our own to demonstrate the correctness of the opinion of the court of appeals in all respects except the ruling made as to the extent that the actions of the trustees may be reviewed in the courts. As to that ruling, we shall make a slight modification to be noted later in this opinion.

We shall now direct our attention to the question of who is qualified to take part in the selection of a trustee in case of a vacancy. A brief statement of certain matters is necessary to present the situation. John Scullin, the testator, was a man of wealth. By his will, he appointed three trustees who were his son, Harry Scullin, Charles L. Gilbert, a business associate, and the Mercantile Trust Company of St. Louis, Missouri. To these trustees he gave all of his property with instructions for its management and distribution. The testator left surviving three children and a daughter-in-law, Stella Wade Scullin, wife of a deceased son. These and their descendants were made the principal beneficiaries of the trust. Note the following clause of the will:

"All the rest and residue of the net income shall be distributed as follows: One-fourth to my son Harry Scullin so long as he shall live; one-fourth to my daughter May Eunice De'Gheest so long as she shall live; one-fourth to my daughter Lenore Madeline Clark so long as she shall live, and one-fourth to my daughter-in-law Stella Wade Scullin so long as she shall live. Each of them shall receive monthly One Thousand Dollars ($1,000.00) on account of his or her share of income, and the excess to which they shall be entitled shall be ascertained at the end of each calendar year, after deducting for current taxes and expenses, and shall be paid to them. If the income of each part or share in any year be less than One Thousand Dollars ($1,000.00) per month, then the deficiency shall be taken from the corpus, but if thereafter in any year the income applicable to each part or share exceeds One Thousand Dollars ($1,000.00) per month, then the excess shall be applied towards the repayment to corpus of such deficiency of any prior year or years."

In another clause of the will, the testator directed that after the death of his son Harry the income should be distributed in six equal parts. The bequests of annual income to the parties designated were absolute except with respect to the portion given to the testator's daughter May Eunice De'Gheest. As to this, it was provided that she should receive her portion the same as the others but in case of her death, the will provided that "(1) Upon the death of my daughter May Eunice De'Gheest the part of the income which would have gone to her if living, shall be distributed by the trustees as follows: the trustees shall, during the life of the trust, have the power of appointment as to said share and shall distribute the same as they may deem proper, 1st, either to my said daughter's husband Charles De'Gheest if living or to her son Harry De'Gheest if living or to Harry De'Gheest's descendants, or any of them, or, 2nd, to my son Harry Scullin if living or if he be dead, to his wife and children or their descendants, and to my daughter Lenore Madeline Clark if living, or if she be dead, to her children or their descendants, and to my daughter-in-law Stella Wade Scullin if living, or if she be dead, to her daughter Mary Lenore Scullin or her descendants, until the termination of the trust. It shall be entirely optional with the said trustees to give as much or as little of the said part or share of income to May Eunice De'Gheest's husband or son or son's descendants, or any of them, as the trustees may deem proper, or they may distribute the whole or any part between them as the trustees may deem proper. Such power of appointment shall continue to exist from time to time until the end of the trust period, and the trustees may give to them, said May Eunice De'Gheest's husband or son or son's descendants, or any of them, the whole of such part or share of income or any portion thereof at any time or times, and thereafter discontinue the making of payments to them, or thereafter again resume the making of payments to them, as the trustees in their discretion may deem best. All income of the said part or share which the trustees from time to time do not see fit to give to May Eunice De'Gheest's

husband or son or son's descendants shall be given by the trustees to my son Harry if living, or if he be dead, to his wife and children or their descendants, and my daughter Lenore Madeline Clark if living, or if she be dead, to her children or their descendants, and to my daughter-in-law Stella Wade Scullin if living, or if she be dead, to her daughter Mary Lenore Scullin or her descendants, in equal parts as provided in clauses (c) and (d) until the termination of the trust."

May Eunice De'Gheest, daughter of the testator, died in 1945. Her husband, Charles De'Gheest, had predeceased her. Their son Harry, sometimes referred to as "Henri" De'Gheest, died in 1944 leaving an only child, Rose Mae De'Gheest. Rose was born after the death of the testator and she was an adult in 1947. She is the person to be dealt with by the trustees under clause (1), supra. She is also the person whose qualification to participate in the selection of a successor-trustee gave rise to this lawsuit. The testator provided for the selection of a successor-trustee in the following manner: "In the event of the death of my son, or of the said Gilbert, or of the inability of them or either of them to act, or in the event of the retirement from business of the Mercantile Trust Company, or the removal of any of said trustees, then a successor or successors shall be appointed and such successor or successors shall have the same powers and authority that the original trustees have, and shall be charged with the same duties. If all of the adults then receiving income hereunder at the time of the appointment agree upon a successor, then they may make such appointment, by the execution of an instrument to that effect duly acknowledged and lodged with the survivor or survivors, but if they cannot so agree, then the appointment shall be made by the court in due course."

The grandmother of Rose De'Gheest died in 1945. Rose then became the person to whom the trustees were to give all or any portion of that part of the income designated by the testator as the De'Gheest share. The trustees did allocate income to Rose every year from 1945 to 1953 in amounts ranging from $9,720 to $29,031.28. A substantial sum in excess of the amount paid to Rose was by the trustees paid to the other beneficiaries of the will. These amounts are set out in detail on page 347 of 308 S.W.2d.

Charles L. Gilbert died in 1937 and Thomas C. Hennings was selected as successor-trustee. Harry Scullin died in 1947 and, after some controversy, Lenore Scullin Clark was designated as successor to Harry. It appears from the record that there was some objection to Mrs. Clark by others having a voice in the selection. Mrs. Clark insisted that she be the successor-trustee and finally obtained approval. Rose De'Gheest approved the appointment but, as we learn from the record, her qualification was questioned and some of the parties insisted that, if the consent of Rose De'Gheest was deemed necessary, her signature should be on a separate paper. The trustee Mercantile Trust Company took the position that Rose De'Gheest was qualified. In 1953, due to illness, Mrs. Clark could not attend to the duties as co-trustee and tendered her resignation. This, however, was done on condition that Paul Bakewell, Jr., be selected as trustee. Rose refused to approve the appointment of Bakewell. As attorney for Mrs. Clark, Bakewell had represented her in two cases involving questions pertaining to the Scullin estate. See Scullin v. Mercantile-Commerce Bank & Trust Co., Mo., 234 S.W. 2d 597; Scullin v. Clark, Mo., 242 S.W.2d 542, 29 A.L.R.2d 1024. It may be stated that the record in this case shows that Mrs. Clark was in favor of giving Rose De'Gheest less income than was allocated to her by the trustees. Bakewell was appointed by the court as temporary trustee pending the outcome of this litigation. At the time the trial court entered its decree, holding that Paul Bakewell, Jr., was not legally selected as a trustee, he resigned and the court appointed Chapin S. Newhard as trustee pendente lite.

■ The question is whether Rose is an adult receiving income under the will. The court of appeals, after a careful consideration of the question, decided that she was. The trial court had likewise so ruled. We approve what was said by the court of appeals. We note in the opinion at page 348(1–5) of 308 S.W.2d, the court stated, "In an effort to ascertain the testator's intent the Court may, so far as possible, place itself in the testator's position and view the facts from his standpoint." That is a good rule often approved. Suppose, then, we were to ask, "What would John Scullin say as to whether Rose was an adult receiving income under the will?" Is there any doubt about the answer? Certainly not. The trustees are in duty bound to administer the trust so far as possible in the same manner as the testator would have done had he been living. The trustees are the alter ego of the testator and when they, under the power given them, allocate money to Rose, it is the same as if it were given her by the testator. In the brief of appellant Bakewell filed in this court, it is said, "The significance of this paragraph is clear. The descendants of May Eunice De'Gheest received nothing from the testator under his will. Whatever benefits such descendants may receive are to come only through the exercise of the discretion of the *trustees* —not the testator." If John Scullin could answer that contention, he would, in all probability, say that whatever benefits Rose received through the action of the trustees, she received through the testator's directions and from his estate. The trustees in this case stand in the shoes of the testator. As to the duties of a trustee, see 90 C.J.S. Trusts § 247, p. 225.

The record shows that the reason the testator had in treating the De'Gheest share as he did was that the grandson, Henri De'Gheest, lived in a manner which did not meet with John Scullin's approval. One witness said that he, Henri, was considered a spendthrift, to say the least. He evidently had other bad habits. Henri died before his mother. So, to some extent (so far as the record shows) the reason the testator had in placing restrictions on the De'Gheest interest was removed by the death of Henri.

Appellant Bakewell says that the will as a whole shows that the testator never intended that any descendants of May Eunice De'Gheest should have any voice in selecting a successor-trustee. It is said that the other beneficiaries under the will were intended to have that power. To this we cannot agree. It is plain that any portion of the income of the De'Gheest share not allocated to Rose is to be (by the trustees) distributed to the other beneficiaries. Appellants would have those who would benefit by allocating nothing or only a small portion to Rose control the appointment of successor-trustees.

We think the testator had a better plan, that is, to have all adults receiving income agree on a successor. This plan insures impartiality. If all cannot agree on a trustee, then a court is to appoint the successor-trustee. The beneficiaries of the will other than De'Gheest, now Rose, were given definite income, while the income of Rose De'Gheest depended on the actions of the trustees. Justice, as well as the provisions in the will, is on the side of Rose that she should have a voice in the selection of successor-trustees. Our opinion is that Rose is qualified to take part in selecting a trustee in case a vacancy occurs. The authorities cited by the court of appeals amply support the ruling made by that court and the decree of the trial court in so far as it pertains to this question is hereby affirmed.

■ The next questions to be determined were presented by the answer of Rose De'Gheest wherein she asserted that "This defendant states that she is absolutely entitled to the share of income from the trust estate established under the last will of John Scullin, deceased, that was provided under said will to be payable to her grandmother as aforesaid; that it was never

intended by the said testator that the co-trustees under said will should have and exercise arbitrary power with respect to her share of the income from said trust fund; that if it was intended by the testator that the co-trustees under said will pay this defendant anything less than the full share of the income and to pay any part thereof to other beneficiaries, then it was to be only through the exercise by such co-trustees of sound discretion on their part, based upon factors relating to such other beneficiaries as well as those relating to this defendant."

The trial court held that Rose De'Gheest was not "absolutely entitled to the share of income from the trust estate" (meaning the De'Gheest share). The court of appeals affirmed. There can be no question as to the correctness of that ruling.

In determining the powers and duties of the trustees with reference to allocating to Rose all or any part of the income to which we have referred as the De'Gheest share, the trial court held that in the execution of the discretion conferred upon the trustees, the exercise of that discretion "must not only be in good faith and from proper motives, but also, since the will does not make their acts absolute or final, their acts may not be beyond the bounds of reasonable judgment." The decree is subject to the interpretation that the question of whether the amounts allocated to Rose are reasonable and equitable and within the bounds of reasonable judgment may be reviewed by the courts. The court of appeals held that whether amounts granted were just and equitable was not reviewable but that the question of whether the amounts were within bounds of reasonable judgment was reviewable. The trial court's decree was ordered modified to conform to the opinion of the court of appeals. We are of the opinion that the testator clothed the trustees and them alone with the power to allocate to the De'Gheest family such portions of the income "as the trustees may deem proper." That clause, "as the trustees may deem proper," was used a number of

times. Another clause reads, "It shall be *entirely optional with the said trustees* to give as much or as little of the said part or share of income to * * *." (Emphasis ours.) It seems clear to us that the testator placed upon the trustees the responsibility of determining what amounts should be paid to the De'Gheest family. Further, their opinion and determination should not be subject to review so long as the trustees perform their duties in a proper manner. Therefore, so long as the trustees do not act arbitrarily, fraudulently, or in bad faith their actions are not reviewable. Lyter v. Vestal, 355 Mo. 457, 196 S.W.2d 769, loc. cit. 772, 773(5), 2 A.L.R.2d 1375, and authorities there cited.

Judge Hennings, one of the trustees, in a brief filed in this court as a respondent, stated, "To his best knowledge and belief this respondent has acted always without partiality and in accordance with his conscience and his best intelligence." It is evident that Judge Hennings is cognizant of the responsibility and obligation he assumed when he accepted the appointment as trustee. So long as the trustees act in that manner, there can be no arbitrary action or fraud or bad faith. The standard of conduct of trustees is stated in 90 C.J.S. Trusts § 247, subd. d, p. 238, as follows: "A trustee is a fiduciary of the highest order, who is required meticulously to observe the fiduciary relationship and to perform the obligations of a trustee to the cestui que trust, and he is held to a high standard of conduct with respect to administration of the trust."

It is our opinion that the testator appointed trustees in whom he had confidence. One was his son, another a business associate, both of whom were no doubt acquainted with his business, his family relationship, and his wishes. A third was a trust company which would, no doubt, act to the end of the trust. Two of the trustees have been replaced. Their successors to function properly as trustees must, of course, acquaint themselves

with the history of the trust estate and its creation so that they may administer the affairs of the estate as the testator would have done had he lived. We therefore rule that absent arbitrary action, fraud, or bad faith the determination made by the trustees of the amount to be paid to Rose De'Gheest cannot be reviewed by the courts.

During the time this suit was pending and while Paul Bakewell, Jr., was acting as co-trustee pendente lite, the trustees each year resolved that Rose should be paid the sum of $25,000. Such an amount was paid to her for the years 1953, 1954, and 1955. The income of the De'Gheest share exceeded $25,000 each of these years. The trial court made an order that the surplus should be retained by the trustees until the final determination of the validity of the appointment of a third trustee. The trial court by its decree made a further order that at the conclusion of this litigation the trustees should determine what further payments should be made to Rose out of this surplus retained by the trustees and to distribute the balance as the testator provided in his will.

█ Those appellants who are beneficiaries under the will insist that the trustees, by allocating $25,000 each year to Rose, determined that such sum should be considered as her share for each of the years mentioned; that the trial court was in error in permitting, by its decree, the trustees the option of making further payments to her for these years. Rose insists that the $25,000 was on an interim basis and that she is entitled to be paid more if the trustees so decide. The court of appeals, at pages 356 and 357 of 308 S.W.2d, considered this question and came to the conclusion that the trustees had made a final determination as to what sums Rose should receive for the years mentioned. The court of appeals ordered the surplus held by the trustees to be paid to the other beneficiaries under the will as therein directed. Since we have ruled that the trustees have the power of allocating the De'Gheest share of income as in their discretion they may deem proper, we should not by court action place any restrictions on the trustees with reference thereto. It is our opinion that the trustees should distribute the surplus in accordance with the powers vested in them by the testator the same as if no litigation had taken place. If the trustees considered the payment of $25,000 as the full share that Rose should receive for the years mentioned, then, of course, they will not allocate to her any additional sums out of the surplus held by them under the order of the court.

█ There appears to be a further controversy over the question of whether Paul Bakewell, Jr., was a legal trustee during the time he acted as such. Bakewell was acting as trustee under the appointment made by the trial court. He was a legal trustee under that appointment and any action taken by him during that time as trustee must be considered as valid.

█ There is one more question which we shall mention briefly. The question was presented to the trial court as to the extent of the powers of the two trustees, Judge Hennings and the Mercantile Trust Company, during the time there was a vacancy. The trial court ruled that in case of a vacancy, the remaining trustees have the power and duty to act in all matters concerning the trust estate except the power of allocating the income of the De'Gheest interest. We are of the opinion, as was the court of appeals, 308 S.W.2d 355, 356 (16, 17), that the trial court was correct in so ruling. Furthermore, there should not be any difficulty with such a situation. In case the beneficiaries qualified to select a successor-trustee fail to agree, the court under the provisions of the will may fill the vacancy.

The cause is remanded to the trial court with directions to modify its decree in conformity with the rulings expressed in the foregoing opinion and as so modified, the decree of the trial court is hereby affirmed.

All concur.